# CHARLESTON.

· COCHRANE *v.* HYRE *et al.*

## Decided March 23, 1901.

SET-OFF—*State of Claim—Knowledge of Assignment.*

> When, in a suit upon a chose in action brought by the assignee thereof, the debtor pleads, as a set-off thereto, a claim against the assignor, of which he avers himself to be a purchaser without notice of the assignment, such set-off will not be allowed if it appears that, before he purchased the claim, the defendant had notice of the assignment, or had knowledge of such facts as were sufficient to have put him upon inquiry as to it, or abstained from inquiry for the purpose of avoiding notice. (pp. 318, 319).

Appeal from Circuit Court, Grant County.

Action by J. W. S. Cochrane, guardian, against Enoch G. Hyre and others. Judgement for defendants, and plaintiffs appeals.

*Reversed.*

FLOURNOY, PRICE & SMITH, for appellant.

J. N. MCMULLAN, for appellees.

POFFENBARGER, JUDGE:

On the 1st day of March, 1895, S. H. Smith of Grant County sold and conveyed his farm to Enoch G. Hyre of said county for the sum of five thousand and fifty dollars of which one thousand six hundred and eighty-three dollars and thirty-four cents was paid in cash and the residue evidenced by three notes for one thousand one hundred and twenty-two dollars and twenty-two cents each bearing interest from date, and payable to S. H. Smith & Bro. in one, two and three years, was secured by a vendor's lien reserved in the deed. In May following Smith assigned and delivered all three of the notes to J. W. S. Cochrane, guardian, at Cumberland, Md., to secure the payment of his negotiable promissory note dated May 6, 1895, for one thousand five hundred dollars payable one year after date with interest to Cochrane's order at Second National Bank of Cumberland, upon which, on the 8th of May, 1895, Cochrane loaned Smith one thousand five hundred dollars. This transaction was accompanied by an agreement that, if Hyre should pay his first note promptly, Cochrane would let Smith have the rest of the money on the three notes. Cochrane swears that either on that or the next day he wrote to Hyre notifying him that the three notes had been assigned to him. Smith swears that soon after he came home from Cumberland on the occasion of the assignment of the notes, he went to Hyre and told him he had transferred the notes to Cochrane, and explained that he had sold his home to get the money, and had the opportunity to get the cash on the notes, and it would be the same to Hyre as he could as easily pay the money to Cochrane.

Smith further testifies that about the time the first note became due, he met Hyre and asked if he had arranged for its payment, to which Hyre replied he had placed about six hundred dollars of it in South Branch Valley Bank and had arranged with his brother and two other persons for the balance and it would soon be paid. Some time afterwards, upon receiving a letter from Cochrane saying the money had not been paid, Smith went to Hyre again and insisted that he pay the money at once as it was important to him. It was paid, and about the

last of March or 1st of April, Cochrane paid Smith one thousand two hundred dollars, and about April 14, six hundred and thirteen dollars the balance of the amount of the three notes according to their agreement.

Before the second note was due, to-wit: on the 8th of December, 1896, Hyre purchased from Mrs. Susan R. Harman a note for the sum of eight hundred and fifty-seven dollars dated December 3, 1890, due one day after date, payable to Mrs. Harman, signed by S. H. Smith and R. C. Smith bearing numerous small credits, and on which the balance due as of the date of assignment was eight hundred and four dollars and twenty-eight cents. In December, 1896, Hyre came to Smith's house and inquired for him; not finding him in, he came back next morning, and informed him he had traded for the Harman note. Smith told him he could not use the note as an offsett against his notes. After this Hyre placed four hundred and fifty-seven dollars and seventy-six cents in said bank for the purpose of paying the balance on the note falling due March 1, 1897, that being the difference between the amount of the Harman note and his note held by Cochrane.

Cochrane declining to accept this settlement and allow credit for the amount of the Harman note, filed his bill in the circuit court of said county at May rules 1897, to enforce his vendor's lien against the land. Hyre demurred and the demurrer being overruled he filed his answer, alleging payment of the notes except as to said sum of eight hundred and four dollars and twenty-eight cents, and as to that sum relying on the Harman note as a set-off; and to the answer there is general replication. The final decree in the cause is in favor of Hyre as to the set-off and recites that it is agreed by counsel that the balance of the two notes has been paid. From it Cochrane has obtained an appeal.

The demurrer is grounded upon the failure of the bill to show authority of plaintiff to sue as guardian, for whom he is guardian, or that he has qualified. The demand being upon securities taken by the guardian in his own name, he may sue in his own name, and it is not material that the omissions complained of occur in the bill. 9 Enc. Pl. & Pr. 933; *Joliffe* v. *Higgins,* 6 Mun. 3; *Truss* v. *Old,* 6 Ran. 556; Bar Ch. Pr. 274.

It is contended that because Cochrane held the notes as collateral security at the time he claims to have given notice, and possibly at the time Hyre bought the Harman note, he had no

assignment upon which he could demand payment. An assignment of a chose in action to secure a debt is upon a sufficient consideration and vests an equitable title in the assignee. 2 Am. & En. Enc. Law 1075.

The evidence is conclusive that the assignment was absolute as to the last two notes in April, 1896, about eight months before the purchase of the Harman note.

Whether the appellee shall have the benefit of the set-off claimed is the principal point to decide, and in considering it, it is necessary to ascertain the rules and principles governing the rights of the parties. The defendant in the court below avers in his answer that he received the note in exchange for some cattle, and his own note December 8, 1896, and without notice of the assignment to Cochrane of his notes to become due and payable March 1, 1897, and March 1, 1898. Having alleged these facts as he was bound to do in order to obtain the benefit of them, he must sustain the answer by proof. This seems to accord with the statute, relating to actions by assignees upon bonds, notes and accounts which reads as follows:

"The assignee of any bond, note, account, or writing, not negotiable, may maintain thereupon any action in his own name, without the addition of 'assignee,' which the original obligee or payee might have brought, but shall allow all just discounts, not only against himself, but against the assignor, before the defendant had notice of the assignment." Section 14, chapter 100, Code.

To obtain such discounts the defendant must undoubtedly show himself entitled to them and to do that he must bring himself within all the conditions named in the statute, one of which is that the title to it vested in him before he had notice of the assignment.

But it may be asked, how is he to prove that he did not have notice? He is not required to prove a negative. On the whole issue of whether he is entitled to the set-off including the question of notice of the assignment before he purchased the claim he seeks to use as a set-off, he must determine it in his favor by a preponderance of the evidence. Notice need not be actual. On that issue he may be concluded by proof of facts, sufficient to put him upon inquiry, and the evidence may cover a wide range.

The notes here involved are not negotiable, and, while by virtue of the statute, the assignee of such a note may sue on it

in his own name, that statute has not changed the nature of his title. It is still only an equitable right, and in determining the issue here, the rules and principles of equity must govern. "An assignee of a note or draft does not acquire the legal title, but an equitable right which by virtue of the statute, he may assert at law in his own name or that of the original payee for his benefit." *Clark* v. *Hogeman,* 13 W. Va. 718.

In such cases even courts of law apply equitable rules and principles. "It is a well settled principle that courts of law will notice the assignment of a chose in action, and protect the interest of the *cestui que trust* against every person who has notice of the trust. And it seems also to be pretty well established that actual notice is not necessary. If a party acts in the face of facts and circumstances which were sufficient to put him upon inquiry, he acts contrary to good faith, and at his peril." *Anderson* v. *Van Alen,* 12 John N. Y. 343. See also *Countryman* v. *Boyer,* 3 How Pr. Rep. (N. Y.) 386.

Another matter claiming attention is the strictness of the rule within which a person situated as is the appellee must put himself. "In all cases in which a party sets up his title to relief in equity as a *bona fide* purchaser, he must deny notice, though it be not charged. It is a general rule in pleading that whatever is essential to the right of the party and is necessarily within his knowledge, must be positively and precisely alleged, and the plaintiffs coming in the character of *bona fide* purchasers were bound to state affirmatively the equity of their case; if they will not aver the fact that they were purchasers without notice we are not bound to presume it." *Frost* v. *Beekman,* 1 John C. Rep. 302; *Murray* v. *Ballou, Id.* 575. See also *Gallatin* v. *Erwin,* N. Y. 55-6.

The note here offered as a set-off was purchased long after it was due, and this has been held to be a circumstance throwing upon the purchaser the burden of showing good faith in all his conduct in relation to his purchase. "Every presumption is to be made against the purchaser of a note after it is due." *Johnson* v. *Bloodgood,* 1 John (N. Y.) 51. In that case Radcliff, Judge, said: "The defense here rests on a note purchased after it had become due. This circumstance alone is a ground of suspicion and has been held sufficient to make it incumbent on the party receiving the note to inquire and satisfy himself that it is good. If he does not he takes it at his peril, subject to every

equitable defense in favor of the antecedent parties against whom he may attempt to enforce it." In the same case Kent, Judge, said: "If a bill or note be endorsed after it becomes due, it throws a suspicion on the transaction and the indorsee must take it subject to all the equity that existed in favor of the maker of the note, before it was endorsed; and if there be any attendant circumstances of fraud the indorsee shall have every presumption turned against him."

Although in *Johnson* v. *Bloodgood, supra,* the court was divided, it was held that the purchaser of a note past due was not permitted to use it as evidence of a set-off against the assignee of the debtor because he had failed in his answer to allege that he purchased it before the assignment, the answer being evasive and equivocal as to the date of purchase, though he denied he had any notice of the assignment at or before the time of making the purchase.

Furthermore, the law enjoins a duty upon the appellee, and he must show in the assertion of his claim that he has performed it. Whatever good faith and fair dealing required of him in obtaining the note must appear to have been done. "An assignee cannot found an equity on his own negligence. If he might have had notice and ought to have sought it, he stands in no better situation than if he had actually obtained it." *U. S.* v. *Sturgess et al.,* 1 Paine U. S. C. C. Rep. 525.

Where it appears from the evidence that the party charged with notice has designedly abstained from inquiry for the very purpose of avoiding notice, he is as firmly bound by this conduct as if he had received actual notice. *Jones* v. *Smith,* 1 Have 43; *Hoy* v. *Bramhall,* 19 N. J. Eq. 563.

Surely the principles laid down in these authorities afford sufficient ground for the position that it is incumbent upon the appellee to sustain his claim by a preponderance of the evidence, and that if it appears that he refused to hear when he might have heard or to see when he might have seen, or to inquire when it was his duty to do so, and the inquiry would have put him in possession of information of the assignment of the last two notes to Cochrane before he purchased the Harman note, he cannot have credit for it as against Cochrane.

The case of *Brashear* v. *West,* 7 Peters 608, in which the opinion was delivered by Chief Justice Marshall illustrates the application of the principles governing such cases. In regard to

this question, the opinion is as follows: "The assignment of the debt due from Brashear to West being valid in equity, has Brashear a right to set-off in equity against judgments obtained for the use of the assignees in the name of West, his claims against West for the money paid to Anderson and for the money received on Bush's claim? The question whether he might have availed himself of these offsets at law does not now arise. Can he avail himself of them as plaintiff in equity? That a chose in action is assignable in equity is not controverted. Equity will protect and enforce the assignment. If subsequent to its being made and before notice of it, any counter claims be acquired by the debtor, these claims may unquestionably be sustained. But if they be acquired after notice, equity will not sustain them. If it were even true that they might have been offered in evidence in a suit at law brought in the name of the assignor, he who has neglected to avail himself of that advantage, cannot, after the judgment, avail himself of such discounts as plaintiff in equity. To deprive a party of the fruits of a judgment at law, it must be against conscience that he should enjoy them. The party complaining must show that he has more equity than the party in whose favor the law has decided. This can not be done in a case like the present, unless the equity of the debtor accrued before notice of the assignment. The right to these discounts then depends on the fact of notice. The assignment was made April 21, 1808. In September, 1808, Brashear became special bail for West in a suit instituted by George Anderson. The bill alleges that at the time of becoming special bail, Brashear had no notice of the assignment. The answer avers that he had notice. It is contended in argument, that the fact of notice is not sufficiently proved by the answer. This cannot be admitted. The defendant has a judgment at law, and the plaintiff comes into court to set aside that judgment by his superior equity. He must show that equity. A circumstance appears in the evidence which has some tendency to support the answer. In July, 1808, the account was settled between Brashear and West and the balance acknowledged. This account calculates interest up to the 21st of April, 1808, the day on which the assignment was made; and strikes the balance on that day. The coincidence countenances the belief that the calculation of interest stopped on that day because the account was then transferred; and increases the probability that West who acknowl-

edged the account was informed of the reason." Upon these circumstances the court found and held that Brashear had, and was concluded by, notice of the assignment.

Hyre has denied in his answer that he had notice of the assignment before trading for the Harman note, and supports the answer in his testimony. He swears Smith never came to see him but once in reference to any of his notes, and then only mentioned the one falling due March 1, 1896, and that not a word was said about the other two.

John W. Hyre, his brother, also swears he was present on that occasion, and that but the one note was mentioned. This occurred on Hyre's place along a line fence, and both of the Hyre's say it happened about the time the first note was due. Smith admits that he had but one conversation at that place, and that John Hyre was there with his brother, working near by, digging a gate or post hole but it was before the note was due, though he is unable to give the date. He says that was the time at which he told him he had assigned the notes to Cochrane.

Hyre also denies he ever received a letter from Cochrane apprising him of the assignment of all the notes as stated by the latter.

Thus, on the question of actual notice, the evidence is nearly or quite evenly balanced. But Hyre knew he had executed his three notes to parties who seem to have been his neighbors and insolvent, and whom he certainly knew to be laboring under great financial embarrassment, and had paid one of the notes to Cochrane, after having a conversation with Smith, and a letter from Cochrane, about it. While the mere fact that he knew of the assignment of the first note to Cochrane ought not to be considered notice of the assignment of the other two to him, it is a fact which may have created a suspicion in the mind of Hyre that they had been assigned to somebody. If it was enough to suggest that fact, it was sufficient to put him upon inquiry. But this must be taken in connection with additional circumstances. Smith had sold him his home under the pressure of his financial embarrassment. His paper in the hands of a relative was long past due, and evidently uncollectable, and purchased by Hyre himself. He must have been reasonably certain from all these circumstances that Smith had assigned all the notes, probably to Cochrane; and a simple inquiry to either Smith or Cochrane which he

had the opportunity to make, when conditions were such as to naturally prompt it, would have revealed the fact. Moreover, Hyre's conduct towards Smith in connection with the purchase of the Harman note betrays an anxiety and uneasiness about the result of the transaction which might well have impelled him to make one trip to find out where his notes were, before he purchased, instead of two immediately afterwards to see if the note he had already purchased was good!

Under all these circumstances, and the evidence on the question of actual notice, it is equitable and reasonable to say he had notice actual or constructive, either of which is sufficient, as hereinbefore pointed out, and so it is held; the fact of notice being more clearly indicated here than in the case of *Brashear* v. *West, supra.*

For the reasons above, the decree rendered in this cause on the 14th day of December, 1899, is reversed with costs to the appellant, J. W. S. Cochrane, guardian, and this cause is remanded to the circuit court of Grant County, to be further proceeded in according to the principles herein declared, and, further, according to the rules governing courts of equity.

*Reversed.*