# CHARLESTON

SPEIDEL GROCERY CO. *v.* STARK & CO.

Submitted June 6, 1907.    Decided November 12, 1907.

1.    LANDLORD AND TENANT—*Lease—Sale—Record.*

A bill of sale or assignment of a lease of real estate, giving an
estate therein for a term of three years, is not required to be re-
corded, in order to give title as against creditors of the vendor.
(p. 515.)

2.    SAME—*Real or Personal Property Lease.*

Such term is personal property, and, as regards such creditors,
is governed by the rules of law relating to other kinds of personal
property.    (p. 515.)

3. Fraudlent Conveyances—*Sale of Lease.*

Possession of such a lease by the vendor, after a sale thereof, raises a legal presumption that the sale is fraudulent as to his creditors, and casts upon the vendee the burden of proving the fairness and good faith of the sale.  (p. 518.)

4. Same—*Evidence.*

To establish his title in such case, against the creditors, the vendee must prove, by sufficient evidence, that the sale was for a fair and valuable consideration, and that the vendor did not continue to have an interest in the property by some secret understanding.  (p. 519.)

5. Same—*Consideration.*

The consideration of such a sale may be an antecedent debt, but the vendee, to repel the presumption of fraud so raised against him, must clearly and fully prove the debt and the amount thereof, or the payment of the consideration in money or other thing, if it be other than an antecedent debt.  Mere proof of admission, by the vendor, of the antecedent indebtedness, alleged as the consideration, is not sufficient as against his creditors.  (p. 519.)

6. Same—*Burden of Proof.*

A deed of trust duly executed by the vendee of a lease, possession whereof is retained by the vendor, conveying the same to a trustee to secure a debt, and duly recorded, is, as against the creditors of the vendor in possession. *prima facie* valid, and the burden is upon them, in a suit to set it aside as fraudulent, to prove that the trust deed creditor had notice of the fraudulent intent of the vendee out of possession, the grantor in the deed of trust.  (p. 521.)

Appeal from Circuit Court, Tyler County.

Bill by the Joseph Speidel Grocery Company and others against M. E. Stark & Co. and others. From the decree, defendants Atwood and Appel appeal.

*Affirmed in Part.    Reversed in Part.*

F. L. Blackmarr, for appellants.

M. D. Hanes, for appellees.

Poffenbarger, Judge:

Assigning as grounds of error the setting aside of a sale of a lease and a deed of trust, on the ground of fraud, M. J. Atwood and Ed Appel have appealed from a decree of the circuit court of Tyler county, in favor of the Joseph Speidel Grocery Company.

On August 8, 1899, Mrs. M. E. Stark took, from Martha
J. Wells, a three year lease on a certain town lot, situate in
a village called Garry Owen, adjoining the city of Sistersville,
agreeing to pay, as annual rent therefor, the sum of twenty
dollars, and erected thereon a two story frame building, a ba-
ker's oven, stable and other outbuildings. In said building, she
resided and carried on a grocery and bakery business, in which
her sister, Mrs. Atwood, the appellant, was a partner. At this
time, Fred Appel, a young man, clerked for them, and later
he married the daughter of Mrs. Stark. Mrs. Atwood re-
tired from the copartnership, and Fred Appel succeeded her.
By a writing under seal, and dated December 24, 1900, Mrs.
Stark, in consideration of $1,600.00, the receipt whereof was
acknowledged, sold, assigned and transferred the lease to
Mrs. Atwood. On the 28th day of December, 1900, Mrs.
Atwood executed a deed of trust, whereby she conveyed the
lease to Fred Appel, trustee, to secure to Edward Appel, his
brother, the payment of a negotiable promissory note for
the sum of $300.00, bearing the same date as the trust deed.
Mrs. Stark and Fred Appel continued the grocery and bak-
ery business on the premises, in the firm name of M. E. Stark
& Co., agreeing to pay Mrs. Atwood rent at the rate of $45.00
per month. In the month of September, 1902, more than
a year and a half after the retirement of Mrs. Atwood from
the firm and her purchase of the lease and execution of the
deed of trust, the mercantile firm was overwhelmed with
financial trouble, owing many debts it could not pay, and
was threatened with many actions, if not, in some cases, al-
ready sued, when Mrs. Atwood, claiming unpaid rent,
amounting to $540.00, sued out and caused to be levied on
the stock of goods, a distress warrant. Thereupon, this
suit in equity was instituted by the Joseph Speidel Grocery
Co., a creditor of M. E. Stark & Co., in aid of an action of
*assumpsit* with an attachment which had been levied upon
the stock of goods. The bill alleged fraud and collusion
among the parties to the mercantile firm, Mrs. Atwood and
Edward Appel, the trust creditor, to hinder and delay the
creditors of the firm and prevent the collection of their
debts, denied that there was any rent due Mrs. Atwood,
and prayed an injunction, restraining further proceedings
under the distress warrant, and administration of the funds

by the court. The injunction was granted, and subsequently, on the petition of the plaintiff, a special receiver was appointed to take charge of the property and collect the debts due the firm. Afterwards an amended bill was filed attacking the sale of the lease to Mrs. Atwood and the deed of trust in favor of Edward Appel as fraudulent. Full defense to all the allegations of the bills was made in the several answers filed by the defendants. They denied all fraud and collusion and averred good faith in all the transactions and proceedings against which relief was sought by the plaintiff. The stock of goods and other property claimed by M. E. Stark & Co. were sold for $595.00 by the constable, by virtue of his levy under the distress warrant, Ed Appel, becoming the purchaser; but, in obedience to the injunction, the officer held the fund, subject to the order of the court. He was appointed special receiver and sold the buildings on the lease under an order of the court for $500.00. On final hearing, the court adjudged the assignment of the lease and the deed of trust fraudulent and decreed the funds to the creditors of M. E. Stark & Co., giving preference to the plaintiff, whose claim then amounted, with interest, to $1040.-47, many others having come into the suit by petition, so that the entire fund was taken by them.

The record discloses no evidence of any indebtedness at the time of the sale of the lease and execution of the deed of trust, nor can it be said that the assignment or transfer was voluntary, since that is negatived by positive testimony to the effect that it was made in consideration of indebtedness due from Mrs. Stark to Mrs. Atwood. All the claims presented against the firm in the bill and petitions seem to have accrued long after the assignment was made. The plaintiff does not show when its claim was acquired, but Fred Appel's testimony, not contradicted, shows that it was for goods sold in June, July and August, 1902, or possibly in July and August only, and certainly not for goods sold as early as within a year after the sale of the lease. There is no evidence showing when any of the other debts were contracted. It further appears, from the uncontradicted evidence of Fred Appel, that M. E. Stark & Co. paid Mrs. Atwood rent at the rate of $45.00 per month, after she had bought the lease, and that the note given to Ed Appel and

secured by the deed of trust, represented money actually loaned to her. The decree seems to rest upon the close relationship of the defendants and the withholding from record of the bill of sale, or written assignment of the lease, as badges of fraud, and this is the line of the argument found in the brief. The decree sets the sale aside, as to the creditors, "because of never having been admitted to record nor recorded in the proper office of Tyler county," and the deed of trust is annulled because it is "predicated on said unrecorded deed." As the lease was for a term of only three years, no recordation thereof was required. Sections 4 and 5 of chapters 74 do not require it. Their provisions do not apply to written contracts, made in respect to real estate or goods and chattels, unless they are made in consideration of marriage, or for conveyance thereof for a term therein of more than five years, or are deeds of trust or mortgages. An absolute deed of sale of chattels is not required to be recorded and its recordation has no legal effect. *Curtin* v. *Isaacsen*, 36 W. Va. 391; *Poling* v. *Flanagan*, 41 W. Va. 191. Section 3 of that chapter relates, except in the case of reservations of title, to goods and chattels, the possession whereof shall have remained with the party for a period of five years, a case not made out by the record. As the bill charges fraud and not a preference, and it does not appear that there were any debts existing at the time the sale was made and the deed of trust executed, the suit cannot be regarded as having been brought under section 2 of chapter 74 of the Code. It charges fraud in the sale and deed of trust for the purpose of hindering, delaying and defeating the rights of creditors. Hence, the suit must be regarded as having been brought under section 1 of said chapter.

As the subject matter of the bill of sale or assignment was a mere chattel real, a term less than five years in duration, created by an instrument not required to be recorded, a writing effecting a sale thereof, does not have to be recorded. Its status is, in that respect, the same as that of a bill of sale or any other personal property, which we have seen need not, and cannot, be so recorded as to have any legal effect. The withholding of such an instrument from record cannot be regarded as evidence of fraud for the reason that it involves no breach of duty to any one. The vendor of this

lease, Mrs. Stark, however, remained in possession thereof. If the rule applicable to movable tangible personal property, making retention of possession thereof evidence of fraud as against creditors, applies to a lease, then the burden would be on Mrs. Atwood to show that she was a purchaser in good faith. If the vendor in an absolute sale of personal property continue in possession thereof, his possession raises a legal presumption that the sale was fraudulent, but it makes the sale only *prima facie*-fraudulent. The presumption is rebuttable and may be overthrown. It puts upon the vendee the burden of proving the fairness and good faith of the transaction. *Bindley* v. *Martin*, 28 W. Va. 773; *Curtin* v. *Isaacsen*, 36 W. Va. 391; *Poling* v. *Flanagan*, 41 W. Va. 191. Between this and the conclusive sentence of the law, making a sale absolutely void, as to purchasers and creditors for failure to record the deed, the distinction is very clear as well as important. In some states the statutes require every sale of personal property, possession of which is not delivered, to be in writing and the instrument recorded. Failure to comply with such a statute renders the sale wholly void; But, even in those states, the courts have made exceptions when the nature of the property is such that delivery thereof cannot be made. An instance of this is a growing crop. Whether such a sale of a lease would have to be recorded is a question not answered by any decision so far found in my investigation of the subject. While personal property, it is not movable, nor is it capable of delivery as most tangible property is. But the vendor can vacate it and put the vendee in possession, and this is most usually done, when sales of such property are made in good faith. In this state, our statute not requiring the recordation of the instrument of transfer, retention of possession by a vendor cannot render the sale absolutely void. Its utmost effect would be to make it *prima facie* fraudulent in so far as it affects the rights of purchasers and creditors. As to whether it has this effect, our decisions do not respond specifically, but it falls within the reason of the rule. Creditors and purchasers of property, the title to which is evidenced by the records, generally rely upon the records in their dealings with reference to its title, and may do so with perfect safety at all times. As to property, the title whereof is not evidenced by the public

records, persons dealing with respect to it, and having no notice to the contrary, rely upon the possession as evidence of title, wherefore, if the retention of possession did not make a sale *prima facie* fraudulent as to such persons, they would have no protection against fraud and deceit. Public policy, therefore, has required the establishment of this rule for their protection. In doing so, the courts have merely recognized and enforced a legal principle that is very broad in its application. Possession of land has always been evidence of title, sufficient to put a purchaser upon inquiry. In making it evidence of title in favor of creditors against a purchaser of personal property out of the possession of the vendee, and requiring him to prove that he is a purchaser in good faith, the courts have simply set it up as a shield and defense against fraud and imposition. Even in the case of conveyances of real estate to the prejudice of creditors, retention of possession by the vendor is a circumstance tending to show fraud and bad faith. It is characterized by the decisions everywhere as a badge of fraud. *Colston* v. *Miller*, 55 W. Va. 490; *Hutchinson* v. *Boltz*, 35 W. Va. 754; *Blackshire* v. *Pettit*, 35 W. Va. 547; *Livesay* v. *Beard*, 22 W. Va. 585. Though delivery of possession of a lease cannot, from its very nature, be made in the same manner in which delivery of movable property can be made, it can be made no less effectually and notoriously, and in the ordinary course of business it is generally done. The vendor vacates and the assignee enters. The rule, therefore, ought as clearly to extend to a lease of this kind as to any other personal property. The rule is founded upon a presumption, that a purchaser will naturally protect his purchase, by taking possession. The enjoyment of the thing purchased is generally, if not always, the object the purchaser has in view; and his neglect to take possession is so unusual and contrary to general experience, as to be very strong evidence that the purchase was only colorable and not real. And it makes a much stronger case in favor of the creditor than a mere circumstance, an item of evidence, tending to prove fraud. It puts the title *prima facie* in the party in possession, so that the claimant must prove a purchase in good faith for an adequate consideration.

To overcome the *prima facie* case so made, the evidence

must be clear, positive and full. It is scrutinized more closely than the evidence in many other cases. While ordinarily fraud must be proved, like any other fact, the law makes cases of this kind exceptional. It gives the creditor the benefit of a presumption, which the alleged purchaser must overthrow. He upon whom such a burden is cast by the law must show not only that he paid an adequate consideration for the property, but also that he did it in good faith. Though the consideration may be an antecedent debt, he must prove the existence of the debt. Whether an adequate consideration passed from him must not be left uncertain by the evidence. The fact is within his knowledge and the means of proof within his control and he must clearly and fully prove his claim. *Colston* v. *Miller,* 55 W. Va. 490; *Bindley* v. *Martin.* 28 W. Va. 773. The evidence produced must be sufficient to rebut the strong legal presumption arising from the retention of possession. Has Mrs. Atwood complied with this rigid rule of law? She claims a sale in consideration of antecedent indebtedness, without showing when or how it accrued. She does not testify. Her brother, J. M. Childers, merely says he was present when the bill of sale was executed and that Mrs. Stark then owed her sister about $1,700.00. The two sisters were present and agreed upon this fact in his presence. This seems to be the extent of his information on the subject. Whether he knew of his own knowledge the time, amount or purpose of any particular loan or advancement is not revealed. His evidence would be sufficient as between Mrs. Atwood and Mrs. Stark, no doubt, but the case of the former against the creditors of Mrs. Stark must leave nothing to mere inference. She must show what was parted with in consideration of the property she claims to have purchased. The facts that she retired from the partnership at about the time she claims to have bought the lease, that the lease may have been conveyed in satisfaction of her interest in the store, and that she was a woman of means and able to have loaned her sister money, are too remote. They fail to show payment. They merely argue ability to pay and possibility of payment, and leave the fact of payment to mere uncertain inference. If Mrs. Atwood advanced all this money to her sister or was her creditor to the extent of her

interest in the store, how easily she could have taken the witness stand and told when, how and in what amounts she had loaned or advanced it, or whether it represented her interest in the store.   Her silence as well as the uncertain character of the evidence upon which she relies are both against her.   *Vandervort* v. *Fouse*, 52 W. Va. 214.   All that J. M. Childers states upon his own knowledge may be true and yet Mrs. Stark not have been indebted to her sister a dollar at the time of the alleged sale.   While he asserts that she had frequently loaned her money, he does not say he handled it for them or saw it or personally knew anything about it.   Evidently he states only what he has heard them say.   Evidence to relieve from the presumption of fraud must have more of the elements of directness and certainty.   *Colston* v. *Miller*, 55 W. Va. 490; *Cochrane* v. *Hire*, 49 W. Va. 315, 319.

The claim of Ed Appel is better sustained.   There is direct and positive evidence that he loaned the money to Mrs. Atwood, and he is not burdened with any presumption of fraud.   The evidence discloses no indebtedness at the time the loan was made, and no circumstances casting suspicion upon the transaction with him has been shown.   His deed of trust may be sustained as against the creditors of Mrs. Stark notwithstanding the failure of Mrs. Atwood, the grantor in the deed of trust, to prove title as against them.   She, having title as against Mrs. Stark, executed the deed of trust in favor of Appel.   He caused it to be recorded long before any of the other debts in question were incurred, and all creditors, relying in any way, upon the lease as security, had constructive notice of the lien. These subsequent creditors, entitled to the presumption of fraud, arising from the mere retention of possession, on the theory that they extended credit under the belief that Mrs. Stark still owned the lease, can have no higher equity than one who loaned money directly as security with the knowledge and consent of Mrs. Stark, and without any knowledge of actual fraud on the part of the then admitted owner. There is no proof that Ed Appel knew or had any reason to believe the sale, evidenced by the bill of sale shown him, was not actual and *bona fide*.   He was not dealing with Mrs. Stark, but with Mrs. Atwood, and was not bound to ascertain

whether she had actually paid the purchase money and made Mrs. Stark her tenant. Though Mrs. Atwood may have been a fraudulent vendee, he is not effected by that fact, since he appears from the evidence to have been a *bona fide* purchaser for value without notice of the fraud. *Blackshire* v. *Pettit*, 35 W. Va. 547; *Goshorn* v. *Snodgrass*, 17 W. Va. 717; *Root-Tea-No-Herb Co.* v. *Rightmire*, 48 W. Va. 222; Code W. Va., chapter 74; section 1. Here the burden of proof shifted to the plaintiff. His answer denies notice of any such fraud and there is no proof to sustain the charge.

From these conclusions it results that the decree complained of must be reversed, in so far as it set aside said deed of trust and denied the claim of Edward Appel, and the cause remanded, with directions to enter a decree sustaining said deed of trust and giving said Appel priority over all other creditors, in respect to the fund in the hands of the court, arising from the sale of the buildings on the lease, and modify the decree complained of accordingly, and in all other respects said decree will be affirmed.

*Affirmed in Part.   Reversed in Part.*