E. M. Frederick, *et al.*

*v.*

Hollie Stump

(No. 10357)

Submitted September 6, 1951. Decided November 13, 1951.

*Shedan & Shedan, George Shedan* and *Joseph J. Shedan,* for plaintiff in error.

*Ambler, McCluer & Davis, James S. McCluer,* and *Fred L. Davis,* for defendants in error.

Fox, President:

On March 21, 1949, E. M. Frederick, A. J. Frederick and C. W. White, partners as White and Frederick Company, instituted their action of detinue against Hollie Stump, in the Circuit Court of Wood County, to recover the possession of one Northwest Crane, Model 105, Serial No. 2091, Powered by Twin City Gasoline Engine, of the value of five thousand dollars, and for damages on account of the detention thereof. Process in the case was made returnable to April Rules, 1949, and was duly executed on the defendant in person. At May Rules, the defendant appeared and filed his plea of *non detinet,* and later, on May 24, filed a special plea in which he asserted that at the date of the institution of the action, and from thenceforth, legal title to the property sued for was vested in him by virtue of a certain writing executed by C. L. Miller, Ralph Hively and W. A. Perine, dated March 8, 1949, and that the plaintiffs, nor any one of them, had any claim to the property and chattels sued for; that defendant did not detain said goods or chattels from the plaintiffs; was the lawful owner thereof; and that he was entitled to the possession or the value of said property together with damages sustained by reason of the detention thereof by the plaintiffs. It appears that prior to the date when this plea was filed in the case, plaintiffs had given bond and taken possession of the property involved.

Trial was had before a jury, beginning on June 9, 1950, and on June 14, 1950, the jury returned the following verdict:

> "We, the jury, find for the plaintiff and that the property described in the declaration in this case belonged to E. M. Frederick, A. J. Frederick and C. W. White, partners as White and Frederick at the time of the institution of this suit."

A motion was made to set aside the verdict and grounds assigned therefor, which motion was overruled on June 24, 1950, and on that day judgment on the verdict aforesaid, in favor of the plaintiffs, was entered by the court, providing that they do retain possession of the property described in the declaration, and that they recover their costs, to which action of the court the defendant excepted at the time. Plaintiffs being in possession of the property, no damages were assessed in the case. On December 18, 1950, on motion of the defendant below, we granted this writ of error. The parties will be referred to in the relation they stood in the trial court.

This litigation grows out of certain financial manipulations of one W. A. Perine, who, at the date of the trial of the case, is said to have been a fugitive from justice, and certain it is that he did not testify in the case. On November 29, 1948, said Perine acquired from one Gordon Staats the property involved in this case. This transaction was evidenced by a bill of sale, bearing that date, and no question is raised as to the title of said Perine to the property which will be hereafter referred to as "crane". In said bill of sale, there was a guarantee that the property sold was free from liens and encumbrances, and the seller guaranteed the title thereto.

In December, 1948, one C. L. Miller contracted to purchase the crane from W. A. Perine and made a cash payment of $500.00 thereon according to a receipt appearing in the record for that sum bearing date of December 7, 1948. It appears from the record that Miller was to pay either $3,500.00 or $4,000.00 for the crane, and that later,.

for financial reasons, he induced one Ralph Hively to join him in said purchase, and thereafter, on January 7, 1949, a writing was entered into, called a bill of sale, in which W. A. Perine purported to sell to C. L. Miller and Ralph Hively, for the sum of $3,000.00, the crane in question. The pertinent provisions of this writing read:

> "Witnesseth: That for and in consideration of the sum of One ($1.00) Dollar, cash in hand paid, and the further consideration of the exchange of property, the said party of the first part does hereby sell, assign, transfer and set over unto the said parties of the second part one Northwest Motor Number 105 with Crane Boom Serial Number 2091, and the said party of the first part does hereby represent and guarantee that the property herein sold and assigned to the said parties of the second part is free from all liens and encumbrances, and he does hereby guarantee the title thereto.

> "It is mutually agreed and understood by and between the parties hereto that the said party of the first part may recover the said Northwest Motor Number 105 with Crane Boom Serial Number 2091 within sixty (60) days from the 7th day of January, 1949, for the sum of Thirty-five Hundred Dollars ($3,500.00) from the said parties of the second part."

This paper was duly acknowledged the same day, and admitted to record in the office of the Clerk of the County Court of Wood County on the day following. Why the paper was recorded in Wood County is not explained because, admittedly, at the date of the writing, the crane in question was located in a railroad yard at Ravenswood, Jackson County, West Virginia, and remained there until sometime in February following. This paper was never recorded in Jackson County.

It is developed by the record that Miller and Hively paid Perine $3,000.00 for the crane, with the understanding, as set out in the writing of January 7, 1949, that he could recover the same within sixty days thereafter by the payment of $3,500.00. It is on this basis, as will be

hereafter seen, that plaintiffs claim that this transaction constituted a chattel mortgage rather than a sale. The evidence shows that at the date of said execution of said paper, Perine was greatly in need of money, and had been trying to negotiate a loan on the crane.

About a week later, one Louis J. Hillegass, an employee of the Parkersburg Savings & Loan Company, dealing principally with insurance matters necessary to the bank's business, enters the picture. It appears that at that time, W. A. Perine was in need of a bulldozer in connection with a strip mining operation in Boone County, but was not able to purchase one on account of being unable to make a cash payment thereon. Hillegass contacted the plaintiffs and found that they had two bulldozers in Boone County. The plaintiffs, or some of them, met Hillegass and Perine in Parkersburg, on January 16, 1949, and out of this meeting grew a tentative proposal by plaintiffs to sell to Perine one of the bulldozers, and take as part payment, at an estimated value of $5,000.00, the crane which Perine then represented he owned, and which was located at Ravenswood, in Jackson County. It is unnecessary to go further into Hillegass's interest in the transaction. Suffice to say that the plaintiffs, or some of them, went to Ravenswood, accompanied by Hillegass, inspected the crane, and on January 17, 1951, before they made an agreement to purchase it, inspected the records in Jackson County as to whether there had been a sale of, or any liens filed against the property of record, and found none. Plaintiffs, or some of them, went on to Charleston on the 16th, and on the 18th of January, 1949, entered into a written agreement with Perine by which they agreed to sell, and did sell to him, one D-8 Caterpillar Tractor, Serial No. 8R4717, with LeTourneau double drum power control unit and angle-dozer, located in Boone County near the Town of Madison. This writing is a conditional sales agreement and the property was sold at the price of $14,500.00, $5,000.00 in cash, receipt of which was acknowledged, $5,000.00 to be paid in sixty days, and

$4,500.00 in ninety days, said two deferred installments represented by notes. In this writing it is stated:

"Said equipment has been delivered to the Buyer F. O. B. its present location in Boone County, West Virginia, near the town of Madison. The Sellers do not warrant the condition or state of repair of said equipment, but do warrant that the same is free and clear of liens and encumbrances."

On the same day, and at the same meeting of the parties, W. A. Perine executed a bill of sale for the crane here involved, which, according to the evidence, represented the $5,000.00 cash payment referred to in the conditional sale made by White and Frederick Company to Perine, above mentioned. This Perine bill of sale reads as follows:

"Know All Men By These Presents, That I, W. A. Perine, in consideration of the sum of Five Thousand Dollars ($5,000.00) paid to me by E. M. Frederick, A. J. Frederick and C. W. White, partners, trading and doing business as White and Frederick Company, the receipt whereof is hereby acknowledged, do hereby bargain, sell, assign and deliver to the said E. M. Frederick, A. J. Frederick and C. W. White, partners, trading and doing business as White and Frederick Company, the following equipment, namely: One Northwest Crane, Model 105, Serial No. 2091, powered by Twin City gasoline engine. Said equipment is hereby delivered F. O. B., Ravenswood, West Virginia, without warranty as to condition of repair; and I, the said W. A. Perine, do covenant with the said White and Frederick Company that I will warrant the title to said equipment free and clear of liens and encumbrances of whatsoever nature."

According to the testimony produced by the plaintiffs, and not denied, there was an agreement between the plaintiffs and Perine, subsequent to the execution of the two bills of sale, last aforesaid, that the plaintiffs would move the bulldozer from its then location in Boone County to a location where Perine was engaged in a strip

mining operation in the same county, and that this was done promptly; and further, that it was agreed by Perine that he would remove the crane from its then location at Ravenswood, in Jackson County, to a point near Clarksburg where the plaintiffs were operating their business. It will be noted that in the two bills of sale it is stated that the property was delivered to the respective purchasers at the separate locations mentioned. One of the points strongly urged in this Court by the defendant is that the title to the property involved never passed from Perine to White and Frederick Company, because there was no delivery on the part of Perine of the property sold. We do not think this position is tenable. The two writings clearly disclose that the properties involved were delivered at their then location, and the uncontradicted evidence shows that following the execution of the writings an agreement was made between the parties to move the properties to other points. It is clear that this subsequent agreement had no affect whatever upon the delivery as stipulated by the writings. In other words, the written contracts control on the question of delivery.

As matters stood on January 18, 1949, the date when the plaintiffs purchased the crane from Perine, it is clear that they stood in the position of purchasers for value without notice of any claims against the property they purchased on the part of anyone, and the property having been delivered to them by the very terms of the agreement evidencing their purchase, they could claim it as their own against the world. There is nothing in the record to indicate that they did not act in good faith. They searched the records of Jackson County, where the property was located, before they made their purchase, and there is no intimation that they had any knowledge or information as to any transaction on the part of Perine with anyone, affecting the title of the property they had purchased, and Perine over his own signature represented that the title was free and clear of liens and encumbrances of whatsoever nature. Of course, that was a false representation, because he had previously either sold the

property or pledged it for a debt, and it was not free of liens, even if he still had title thereto.

Perine did not keep his agreement promptly to remove the crane from Ravenswood to a point near Clarksburg as he had agreed. Plaintiffs say they had frequent contact with Perine by telephone and endeavored to enlist the aid of Hillegass in having the crane delivered to Clarksburg as had been agreed upon. There is some confusion as to when this property was really moved from Ravenswood. From Miller's testimony, it appears that the crane was removed from Ravenswood to Parkersburg under the direction of himself and Ralph Hively. It appears that two or three efforts were made to remove the same, and that it was moved to different points on different dates. This is not of great importance, because certainly the crane was at Ravenswood until after the bill of sale of January 18, 1949, was executed to the White and Frederick Company. The crane was removed to a point near Parkersburg around the 20th of February, 1949. At that time C. L. Miller, sometimes called Corley Miller, had a contracting job on which he desired to use the crane for a few days, and it is contended by the plaintiffs that, through Perine, they arranged that he might use the crane for a few days for an agreed compensation, and one of the plaintiffs, White, testifies that he had a telephone conversation with Miller touching the use of the crane. Hillegass confirms plaintiffs' understanding as to the lease, testifying that on one or more occasions they contacted him about collecting the amount due them from Miller for the use of the crane, but he was unable to contact Miller. Miller denies that he ever had any communication with the plaintiffs about the use of the crane, and denies any telephone conversation. This is only important in connection with Miller's good faith, and the good faith of others, because if Miller had been using the crane under some arrangement with the plaintiffs, his good faith in afterwards selling it to the defendant, Hollie Stump, could, and would be, questioned. This was a jury question, and it is quite probable that,

in view of other matters which will be hereafter mentioned, the jury did not believe in the good faith of Miller in any of these transactions. Hively, it appears, was not greatly involved. He probably never saw the crane before this purported purchase on January 7, 1949, but was willing to put up his money merely as a matter of investment, and seemed quite willing to permit the property to be sold to another person, provided he received his half of the $3,500.00 which Perine would have been required to pay in order to recover the property. Miller, however, was otherwise involved. He was a brother-in-law of Perine, and seems to have been in close touch with all of these transactions, although he denies he ever had any knowledge of Perine's sale of the crane to the plaintiffs.

At this point, plaintiffs, not having received the delivery of the crane at their place of business near Clarksburg, nor compensation for its use by Miller, went to Parkersburg to look into the situation, and enlisted the aid of a member of the State Police. They finally located the crane on a highway north of Parkersburg where it was being used by Miller in raising some steel construction in connection with the erection of a theatre. When they first contacted Miller in connection with the crane, he denied knowing anything about it. According to the testimony of one of the plaintiffs, White, Miller, when asked about the crane, said:

> "* * * he said he had no interest in it, and never had, that the shovel belonged to Bill Perine, he didn't even know how it came from Ravenswood to Parkersburg, but he said he thought the Contractors' Equipment Company brought it there, he wasn't sure, he believed to Perine's brother's place. He denied all knowledge of it or any interest in it and said he never had and he didn't want any, that he didn't want anything to do with it, that Perine had sold the crane a day or two before that to a man by the name of Stump, and he wasn't going to have anything to do with it."

This statement is corroborated by Burk, a member of the State Police, and by one of the plaintiffs, Frederick. On

the trial of the case, Miller did not deny that he had made such a statement, and admitted that it was not a true statement of the facts, which, of course, the record discloses.

The plaintiffs went to a place where the crane was located a very short time, probably two or three days, after the alleged sale to Hollie Stump, and Miller's statement that Perine had sold the crane a day or two before to a man by the name of Stump, was probably correct, and was the only correct statement he made at that time, because he was a party to the sale to Stump, signed a written agreement evidencing such sale, had participated in the removal of the crane from Jackson County to Wood County, and was otherwise interested in the crane.

With the information received by the plaintiffs that the defendant, Hollie Stump, claimed to have purchased the crane, they immediately called on Stump at his home. He admitted his purchase, and has at all times denied having any knowledge of the former sale of the crane by Perine to the plaintiffs. When all of the facts were developed, it was found that on the 8th day of March, 1949, a writing was executed, purporting to transfer the crane in question to Hollie Stump. This writing is signed by C. L. Miller, Ralph Hively and W. A. Perine, and reads as follows:

"Know All Men By These Presents:

"That we, C. L. Miller and Ralph Hively, of South Parkersburg, West Virginia, for and in consideration of the sum of $3,500.00 cash in hand paid to us by Hollie Stump, of Parkersburg, West Virginia, do hereby sell, transfer, assign and deliver unto the said Hollie Stump all of our right, title and interest in and to a certain agreement dated January 7, 1949, between W. A. Perine, of Parkersburg, West Virginia, as party of the first part, and the undersigned C. L. Miller and Ralph Hively, as parties of the second part, and we do further sell, transfer, assign, set-over and deliver unto the said Hollie Stump for the consideration aforesaid, all of our right, title and interest

in and to the Northwest Motor No. 105 with Crane Boom Serial No. 2091, described in said agreement of January 7, 1949.

"This assignment is made without recourse to us either by Hollie Stump, W. A. Perine, their heirs and assigns.

"The said W. A. Perine does hereby ratify and affirm this assignment and agrees that it may be made as herein stated."

It is under this paper that the defendant made his defense to this action.

Before taking up the discussion of the several questions arising in this case, it may be well at this point to state that there does not appear to be any dispute as to the transaction by which the crane involved was sold or mortgaged to Miller and Hively on January 7, 1949. No question is raised as to the ownership of the crane by Perine at that time, his right to sell or mortgage the same, and the right of Miller and Hively to put up their money to acquire the rights which that writing. gave them. At that time, the plaintiffs had no interest whatever in the property. From that time on Hively appears to have had little to do with the transaction. It appears that he was induced to enter into it largely because he wanted to use the crane in doing some excavating on his property in Wood County, and the record does not disclose whether he was able to do that excavating before the sale to Stump. He did assist in the removal of the crane from Ravenswood to Hilltop, in Wood County, the place where we understand Hively was engaged in business. The record discloses that the interest of Hillegass in the transaction was to straighten out the affairs of Perine by reason of his large indebtedness to the bank by which he, Hillegass, was employed. He denies that he had any knowledge of the January 7, 1949, transaction, or of the later transaction by which Stump claims to have acquired title to the crane on March 8, 1949. His interest, whatever it may have been, is only important so far as it ties in with the claim of the plaintiffs that when Stump

purchased this property he did so with an agreement between him and Perine that if he made any money out of the transaction he was to use part of it to help liquidate some of Perine's indebtedness to the Parkersburg Savings & Loan Company.

We necessarily begin our further discussion of this case by taking up the writing between Perine and Miller and Hively, dated January 7, 1949. As stated above, no question is raised as to the validity or the good faith of that transaction, and at that time the plaintiffs had no interest in the property. The important point involved in relation to that writing is: Was it an absolute sale, or was it intended as a chattel mortgage for the security of the $3,000.00 which Miller and Hively paid or advanced at that time? If there was an absolute sale on the part of Perine to Miller and Hively, with the mere right to repurchase within sixty days, as contended by the defendant, then the plaintiffs acquired no title to the crane when they assumed to purchase the same on January 18, 1949, eleven days thereafter, provided, of course, the earlier sale was a completed transaction. There is nothing in this writing of January 7 in respect to delivery; but Miller and Hively say they went to Ravenswood the day following their alleged purchase and found the crane in the railroad yards at Ravenswood, and made some experiments with the crane. Whether that constituted delivery is questionable, but in our view of this case, it is unimportant. If the writing of January 7, 1949, did not evidence an absolute sale, but should be construed as a chattel mortgage to secure the grantees the $3,000.00 they advanced Perine, then to protect Miller and Hively in the payment of the sum advanced by them on the strength of this agreement, against the innocent purchasers for value, the writing must have been recorded in the office of the Clerk of the County Court in the county in which it was located and this was not done. Code, 40-1-9. The recordation of the writing in the office of the Clerk of the County Court of Wood County was of no value. If the writing should be construed as evidence of an abso-

lute sale, no recordation was required. *Poling* v. *Flanagan,* 41 W. Va. 191, 23 S. E. 685. In this case, it was held:

> "A writing showing a sale of personalty need not be recorded; but a mortgage or deed of trust of personalty must be recorded to bind purchasers without notice and creditors."

> "A writing importing an absolute sale of chattels, but in fact intended only to secure a debt, is a mortgage, and must be recorded as a mortage of chattels to affect creditors and purchasers without notice, but, if recorded, it will bind them."

This law fits the case at bar. See also *Curtin* v. *Isaacsen,* 36 W. Va. 391, 15 S. E. 171; *Zanhizer* v. *Hefner,* 47 W. Va. 418, 35 S. E. 4; and *Speidel Grocery Co.* v. *Stark & Co.,* 62 W. Va. 512, 59 S. E. 498. Therefore, it is obvious that the decisive question in this case is whether the writing of January 7, 1949, was an absolute sale or chattel mortgage.

We think it was a chattel mortgage, and that the parties to the writing so understood, notwithstanding their subsequent statements to the contrary. There have been numerous cases in this State on the question of declaring a deed for real estate, absolute on its face, to be a mortgage; but we have not found any case in which personal property has been so dealt with. We cannot see, however, that any distinction need be made between a sale of goods and chattels as distinguished from real estate. The general principle announced should, we think, be applied to each, and on this assumption, we refer to the case of *Vangilder* v. *Hoffman,* 22 W. Va. 1, as stating the rule which, so far as we can observe, has never been departed from, although, of course, rulings of this Court have depended upon the different situations presented in the numerous cases with which it has had to deal. Points 6 and 7 of the syllabus in the *Vangilder* case read as follows:

> "Though a deed be absolute on its face, yet if it be shown by the circumstances surrounding

the parties and by their parol declarations, that the land was conveyed as a security for money loaned, a court of equity will declare such absolute deed a mortgage; and when on the parol evidence it is doubtful, whether the conveyance should be regarded by a court of equity as an absolute deed or as a mortgage to secure a loan, the courts inclined to hold it to be a mortgage, but if under the statute-law in force, when such transaction occurs, there is a forfeiture of the principal or interest, in cases of usury the court of equity, if a loan be shown, will presume, that the legal rate of interest was to be paid therefor, unless by clear and satisfactory evidence usury be established, but the same degree of evidence will not be required, as is required to convict in criminal prosecutions."

"If the proof offered to establish, that a deed absolute on its face was intended to secure a loan of money and was therefore a mortgage, consists only of the parol declaration of the parties, such proofs, in order to prevail must be clear and strong, if it be unaided by proof of the situation and circumstances of the parties and their conduct prior to, at the time of or after the execution of the deed. The following circumstances and facts have great weight in leading a court to the conclusion that a deed absolute on its face is merely a mortgage: First, that the grantor was hard-pressed for money, and that the grantee was a known money-lender; second, that the actual execution of the deed was preceded by a negotiation for a loan of money by the grantee to the grantor; third, that the parties did not apparently consider or contemplate the quantity or value of the land, when the deed was made; fourth, that the price professedly given for the land on the face of the deed was grossly inadequate; fifth, that the possession of the land has remained with the grantor, whether rent be nominally reserved or not; and if no rent is even professedly reserved, this last circumstance is entitled to very great weight, if unexplained."

In the case before us, the evidence discloses that Perine, the owner of the crane, was in financial difficulties, and that he had sought to borrow money on the security of

the crane, but had not been able to do so. In December, 1948, the admitted tentative sale of the crane was made to Corley Miller by Perine, and he had received two payments of $500.00 each. Miller says he was to pay $3,500.00 for the crane, and Hively testified that he understood Miller had agreed to pay $4,000.00 therefor. However this may be, Miller was not able to carry out his agreement to pay the purchase money, and finally enlisted the aid of Ralph Hively in the purchase of the crane. There were extended negotiations and finally Perine agreed to accept $3,000.00, provided he was permitted to recover the crane within sixty days, and Miller and Hively paid the sum of $3,000.00 and secured the contract of January 7. There is little doubt that the crane was worth in the neighborhood of $5,000.00, the best evidence of that being that plaintiffs, in their purchase of the crane, were willing to accept the same in trade at that figure, although the fact that they were disposing of equipment at a larger price should be taken into consideration. Miller's interest in entering into the agreement was to save the money he had already invested, and Hively had in view to use the crane in some excavating work within the sixty day period, and he seems to have understood that the probabilities were that he would only have the use of the crane for that time. The paper was recorded, as was necessary in the event the same was treated as a mortgage, and it need not have been recorded if the sale was absolute. Whether the parties knew of this distinction, we cannot say. Certainly they knew that the crane was located in Jackson County, because they went to Ravenswood to inspect it on the day following their alleged purchase. The crane was removed from Ravenswood at the instance of Hively, because he wanted to do his grading work within the sixty day period within which Perine had the right to recover the crane. Whether Miller, who had principal charge of the removal of the crane, was doing so at the instance of Perine, who had agreed to remove the same to Clarksburg, or had in contemplation its use in Parkersburg for a short time, the record does not dis-

close; but suffice to say that each of them had in view the sixty day period. On march 8, 1949, the last day of the sixty day period, aforesaid, Perine brought Stump to Miller and Hively with $3,500.00, the amount Perine would have had to repay to recover the property, and that sum of money was paid to Miller and Hively on that day. Hively says that Perine had the money and he, Hively, was required by Perine to make what is termed a bill of sale to Stump, and that he did so on condition that Perine sign the paper. Miller in his statement to White and the State Trooper stated that the crane belonged to Perine, and that he, Perine, had sold it to a man by the name of Stump. This was some two or three days after the execution of the bill of sale of March 8, 1949. It is significant that in that writing there is an assignment of the writing of January 7, 1949, followed by language evidencing the sale of the property mentioned in the writing. In addition to this, we have the alleged statement of Stump that if he made any money on his purchase, he would help out Perine on account of his indebtedness to the Parkersburg Savings & Loan Company. It is true that Stump denies this statement, but the jury had a right to believe White rather than Stump, and evidently they did so. All this indicates that from the very beginning the purpose was to aid Perine, and get as much out of the crane as possible. When Stump acquired the contract of January 7, which gave him the same rights as Miller and Hively held in respect to the chattel mortgage, and their claim to the property covered thereby, thus protected him in his investment, the idea of helping Perine still exists. We have a right to deal with the matter in its entirety. We think the transaction of March 8, 1949, under which Stump claims the ownership of the crane, strongly supports the theory that the interest of Miller and Hively therein was that of mortgagees, rather than owners of the crane.

There is ample authority for this statement in cases decided by this Court. The law in this State is that facts and circumstances showing a deed or bill of sale, abso-

lute on its face, to be a mortgage, may be established by parol evidence. The authorities on the question were assembled and stated in the case of *Law* v. *Meadows,* 131 W. Va. 132, 46 S. E. 2d. 449, and are as follows: Pomeroy's Equity Jurisprudence, 5th ed. Sections 1192-1196, page 567; Hogg's Equity Principles 712; 36 Am. Jur., 759; *Davis, Committee* v. *Demming,* 12 W. Va. 246; *Lawrence* v. *DuBois,* 16 W. Va. 443; *Hoffman* v. *Ryan,* 21 W. Va. 415; *Van Gilder* v. *Hoffman,* 22 W. Va. 1; *Gilchrist* v. *Beswick,* 33 W. Va. 168, 10 S. E. 371; *McNeel's Ex'rs.* v. *Auldridge,* 34 W. Va. 748, 12 S. E. 851; *Sadler* v. *Taylor,* 49 W. Va. 104, 38 S. E. 583; *Thacker* v. *Morris,* 52 W. Va. 220, 43 S. E. 141; *Hursey* v. *Hursey,* 56 W. Va. 148, 49 S. E. 367; *Fridley* v. *Somerville,* 60 W. Va. 272, 54 S. E. 502; *Hudkins* v. *Crim,* 72 W. Va. 418, 78 S. E. 1043; *Gibson* v. *Hopkins,* 80 W. Va. 756, 93 S. E. 826; *Napper* v. *Rice,* 127 W. Va. 157, 32 S. E. 2d. 41; *Ross* v. *Midelburg,* 129 W. Va. 851, 42 S. E. 2d. 185; *Holmes* v. *Basham,* 130 W. Va. 743, 45 S. E. 2d. 252. The general law covering a sale of personal property with the right of repurchase is stated in 46 Am. Jur., Section 514, and a reading thereof will show that the rule in respect to sales of personalty is not materially different from the rule applied to the sale of real estate by absolute conveyance alleged to be a mortgage.

We have held that the writing of January 7, 1949, was a mortgage, and it must necessarily follow that the beneficial ownership of the crane remained in Perine, and he could thereafter transfer the same to an innocent purchaser for valuable consideration without notice of the existence of the chattel mortgage. 36 Am. Jur. 777. Miller and Hively did not record their mortgage in Jackson County, and the recordation in Wood County did not protect them against innocent purchasers for valuable consideration who had no actual notice of the writing. The record discloses that the plaintiffs had no notice of such writing; that they examined the records of Jackson County, and found nothing against the crane; and they subsequently purchased the crane for a valuable consideration. This constituted them innocent purchasers for val-

uable consideration without notice, and vested in them title to the crane, not only as against Perine, but against the lien or mortgage created by the writing of January 7, 1949. Miller and Hively, having failed to record their paper in Jackson County, simply failed to protect themselves in their rights, and they were fortunate indeed to get their money by the sale to Stump in March, 1949.

According to the testimony of Hively, and the statement of Miller, to the effect that Perine had sold the crane to Stump some two or three days prior to the date of his conversation with White and the State Trooper, at the theatre location on a highway north of Parkersburg, they must have treated the payment of the $3,500.00 to them as being made by Perine, although it is quite probable that Stump furnished the money. In this situation, if Perine did make the redemption, which entitled him to recover the crane, then having, by the bill of sale of January 18, 1949, sold the crane to the plaintiffs, his sale to Stump passed no title to Stump, because Perine could not transfer or grant any greater title to the crane than he himself possessed, which was no title whatever. "In general no one can transfer a better title to a chattel than he himself has, even to a *bona fide* purchaser." *Ullman, Einstein & Co.* v. *Biddle Bros.*, 53 W. Va. 415, 44 S. E. 280.

The circumstances surrounding the transaction of March 8, 1949, and the inferences to be drawn from the fact that Stump was not willing to take a straight bill of sale for the crane, but took an assignment of the writing of January 7, with an incidental grant of the property therein mentioned, indicates his doubt as to just what he was acquiring, and the fact that he later stated that if he made any money from the transaction he would be expected to help out Perine in his indebtedness with the bank, should have put him on inquiry, and lessens the force of his contention that he stands in the position of a purchaser without notice of plaintiffs' rights. Of all this the jury was the judge, and they found for the plaintiffs. They also found for the plaintiffs on the question of temporary possession of the crane by Miller at the time the

contract of March 8, 1949, was made. Defendant would have us believe that at that time Miller and Hively were in possession of the property as their own, but the evidence strongly indicates that Perine had employed Miller to transfer the property to the vicinity of Clarksburg, and his possession at the time was temporary under an agreement between plaintiffs and Miller that Miller was to be permitted to use the property for a short time, upon the payment of compensation therefor. All these questions, the jury decided in favor of the plaintiffs, and we see no reason for disturbing the verdict returned by it on any ground of disputed facts in the case.

The question of whether the writing of January 7, 1949, was an absolute sale or chattel mortgage was one of law for the court, and in making its decision it had a right to take into consideration all of the facts and circumstances presented in the trial of the case. We are of the opinion that the court should have held, as a matter of law, that the said writing of January 7, 1949, was a chattel mortgage to secure the payment of the money advanced to Perine by Miller and Hively, and that having failed to record that writing in Jackson County, where the property pledged was located, neither they, nor anyone holding under them can assert rights under said contract of January 7 as against the plaintiffs who, on January 18, 1949, purchased the property under conditions which made them innocent purchasers for valuable consideration, and without notice of any rights then held by Miller and Hively. This being true, the court should have directed a verdict in favor of the plaintiffs.

In holding that the writing of January 7, 1949, by which Perine assumed to sell the crane to Miller and Hively, was a chattel mortgage and not an absolute sale, it follows that we must hold that the sale from Perine to Stump, on March 8, 1949, was an absolute nullity, because before that date, on January 18, 1949, Perine had sold the crane to the plaintiffs, and any sale he might make thereafter would pass no title. Stump could not acquire a greater title than Perine possessed, which was no title,

and, therefore, he could not become a purchaser to the prejudice of the plaintiffs, however innocent he might have been of any knowledge of the sale to the plaintiffs or of circumstances putting him on inquiry. This is the cold inexorable logic of the situation. This being true, the jury had no function to perform, and we need not make further inquiry into the facts upon which its verdict was based, nor into the instructions given and those offered and refused. However, we have examined these instructions. The instructions, offered by the plaintiffs, are based upon the theory that the facts and circumstances of the case were such as to impose upon Stump the duty of making inquiry. Plaintiffs contend that the taking of the assignment of the writing of January 7, rather than a simple bill of sale for the property involved; the taking of such assignment of the contract without recourse, and the title to the property involved without warranty; the insistence of Hively in particular that the transaction be approved and the writing signed by Perine; and the fact that Stump is alleged to have stated that if he made a profit in the transfer he would use it to the benefit of Perine in reducing his indebtedness with the Parkersburg Savings & Loan Company, combined, show that Stump must have known that there was something about the transaction calling for inquiry on his part. These circumstances, we think, justify the giving of plaintiffs instructions. The instructions offered by the defendant, and refused by the court, were based upon the theory of an absolute sale by Perine to Miller and Hively on January 7, 1949. If it had been proper to permit that theory to go to the jury, some of the instructions along that line should, perhaps, have been given. However, in our view of the case, holding that no sale of the property was made by Perine to Miller and Hively, there was no place for that theory in the case, and instructions based on such theory should not have been given. This Court cannot hold as it does that there was no sale by Perine to Miller and Hively, on January 7, 1949, and then find error in refusing to give instructions based upon the theory that absolute title to the property did pass by such

writing. Having taken our stand on that proposition, we must follow our ruling to its logical conclusion. Taking this view of the case, we find no material or reversible error in the trial court's ruling on instuctions offered by the defendant and refused by the court.

The judgment of the Circuit Court of Wood County is affirmed.

*Affirmed.*