# CHARLESTON.

CURTIN *et al.* *v.* ISAACSEN *et al.*

Submitted February 1, 1892. —Decided April 2, 1892.

1. FRAUDULENT CONVEYANCES—POSSESSION—SALE.

The fact, that the vendor continues in possession of goods and chattels after an absolute sale, raises a legal presumption that the sale is fraudulent as to creditors of the vendor, which throws upon the vendee imperatively the burden of proving the fairness and good faith of the transaction; and this can not be done without sufficient evidence, that the sale was for a fair and valuable consideration, and that the vendor did not continue to have an interest in the property by secret understanding; and in the absence of all evidence to show such consideration, or in absence of all evidence from which the inference can be fairly drawn, that the vendor did not continue to have an interest in the property, the legal presumption that he did, and that the sale was not for such consideration, becomes absolute and conclusive; and the same will be the conclusion, though there is some evidence on these subjects, if insufficient to rebut the strong legal presumption arising from the vendor's retention of possession after the sale.

2. FRAUDULENT CONVEYANCES—DEED OF TRUST.

A mortgage of goods and chattels not recorded is void as to creditors of the mortgageor. So is an unrecorded deed of trust.

3. FRAUDULENT CONVEYANCES—MORTGAGE—CHATTEL MORTGAGE— RECORDATION—DEED—POSSESSION—SALE.

A deed of absolute sale of goods and chattels is recorded. Another writing, contemporaneous with it, operates to make such deed a mortgage, but it is not recorded. There is no delivery of possession of such goods and chattels. The recordation of such deed, alone. has no effect to render it effective as an absolute sale, nor to make the transaction valid as a mortgage, as to creditors of the grantor in such deed.

4. VENDOR'S LIEN—POSSESSION.

A seller of goods has a lien upon them for their price, unless stipulated otherwise, so long as they remain in his possession.

*B. L. Butcher* and *W. L. Kee* for appellants.

*C. H. Scott* and *L. D. Strader* for appellees.

BRANNON, JUDGE:

Leon Isaacsen was engaged in the lumber business in

Randolph county and engaged with the firm of G. W. Curtin & Co., lumber dealers, to furnish them logs and lumber. From time to time G. W. Curtin & Co. advanced Isaacsen various sums of money to enable him to purchase logs and lumber, which he was to sell to Curtin & Co., until on settlement on the 22d April, 1889, it was found that Isaacsen owed Curtin & Co. eight thousand nine hundred and thirty five dollars and twenty five cents, and on that date he executed a deed whereby he conveyed to Curtin & Co., in consideration of such indebtedness, a tract of land, the timber on several tracts of land, and a large quantity of lumber, including therein two hundred thousand feet purchased of Marshall Scott and stacked on said Scott's land, and certain horses, wagons, and harness.

This deed was recorded. Substantially, it conveyed all the property Isaacsen possessed. At the time of the execution of said deed a written agreement was made between Curtin & Co. and Isaacsen, reciting the execution of said deed, and providing that the poplar lumber by it conveyed should be delivered by Isaacsen at certain points, as Curtin & Co. should direct, and that Curtin & Co. should receive and inspect and credit it on said eight thousand nine hundred and thirty five dollars and twenty five cents, at prices specified; that Curtin & Co. should advance to Isaacsen four dollars per thousand feet of lumber, payable every two weeks as the inspection should be made, to be deducted from the price fixed for the lumber; that after all the lumber should be delivered, if its value exceeded said debt, the excess should be paid to Isaacsen, and the land, wagons, horses and harness should be reconveyed to Isaacsen. This agreement was not recorded.

Under said agreement Isaacsen delivered a part of said lumber to Curtin & Co., but became, from want of means and pressure of creditors, unable to further execute it, and suspended work.

Several creditors of Isaacsen sued him, and levied executions and attachments on the lumber and other chattels conveyed by said deed to Curtin & Co.; and thereupon Curtin & Co. brought a chancery suit in Randolph Circuit Court against Isaacsen and Bucky and other creditors, praying

that said deed and agreement be held to constitute a mortgage on said property, and that said creditors be enjoined from enforcing their attachments and executions, and that a receiver be appointed to take charge of and sell said personal property, and that the land be sold, in order to pay their said debts.

The said creditors answered, attacking said deed and agreement between Isaacsen and Curtin & Co. as fraudulent and void as to them.

Marshall Scott, having sold Isaacsen certain timber growing upon Scott's land, and agreed to saw it into lumber for Isaacsen, and having sawed it accordingly, brought a chancery suit, and levied an attachment on said lumber to recover the debt due him from Isaacsen for the lumber, claiming that, as the lumber was yet on his land, he had a lien for its price, as well as an attachment lien; assailing said deed and agreement between Isaacsen and Curtin & Co. as fraudulent and void, and asking that the lumber on his land be sold to pay his debt.

Curtin & Co. contested Scott's lien and demand, as did also Isaacsen, and Curtin & Co. claimed priority over Scott by reason of said conveyance to them from Isaacsen. A decree in the two causes, heard together, held the said deed from Isaacsen to Curtin & Co. void as to the debts of said creditors, postponed the debt of Curtin & Co. to the debts of such creditors, according Scott preference for his debt on the lumber which he had sold Isaacsen. From this decree Curtin & Co. appeal.

Is the deed void as to the creditors attacking it? Let us view it alone, separate from the agreement made contemporaneously with it. Its face declares it to be an absolute sale of the chattels in question. As such, our statute does not require it to be recorded, and its recordation works no legal effect. The sale was not accompanied by delivery of possession, but as shown by the agreement, the admission of Curtin & Co.'s bill, and the evidence, the parties intended the property to continue, and it did continue, in Isaacsen's possession; and thus the transfer was *prima facie* void as to creditors. *Davis* v. *Turner*, 4 Gratt. 422.

In the case of *Bindley* v. *Martin*, 28 W. Va. 773, it was

held that in an absolute sale of personal property the fact, that the vendor continues in possession, raises the legal presumption that the sale is fraudulent as to creditors of the vendor, throwing imperatively upon the vendee the burden of proving fairness and good faith, and that this can not be done without sufficient evidence that the sale was for a fair and valuable consideration, and that after the sale the vendor did not continue to have an interest in the property by some secret understanding, and that in the absence of evidence to show such consideration, and that the vendor did not yet retain an interest, the legal presumption that he did have yet such interest, and that the sale was not for a fair and valuable consideration, becomes absolute and conclusive.

In sales of chattels delivery is the marked sign of sale, importing that, as possession has changed, so has title changed; and where possession remains with the seller, leaving him thus outwardly to the world still the owner, the law holds him such until it be shown that there has been a sale for a fair and valuable consideration, which is necessary in all sales, and moreover, that the seller retained no interest, notwithstanding he is yet in possession.

Now, then, in the present case, it does seem there was a fair and valuable consideration; but there was no delivery of possession, and the seller retained a substantial interest in the property. He was to get all the proceeds of the lumber after payment of the debt. He was to get four dollars per one thousand feet of lumber in aid of his delivery, and have a re-transfer of wagons, horses, and harness. The agreement shows that he retained an interest. It is not a mere presumption. He yet owned the property subject only to the debt. Viewing it as a sale, I see no reason why it is not voidable at the suit of creditors.

But Curtin & Co. claim that it was not in fact a sale but a mortgage, and propound the proposition that as a mortgage the transaction is valid. No brief is filed in their behalf to uphold this contention, and I am unable to see any substantial ground to support it. Looking at the two instruments together, as we may do, since being contemporaneous in execution they are parcels of one transaction,

and together constitute the act, they create a mortgage. If, as a mortgage, it does not fall under the head of an absolute sale, above discussed, then we must regard it as a deed of trust. A deed of trust of personalty is a recordable writing and if recorded is valid, though the possession remains with the grantor. If both the deed and agreement had been recorded, doubtless they would be valid.

It may be argued for Curtin & Co. that it was not necessary to record both papers; that, as the paper which passed title from Isaacsen was recorded, that was sufficient to inform creditors and others that Isaacsen no longer had title, the other paper being only for the defeasance of the deed in case of payment—merely a condition defeating or qualifying the deed. But one answer to this is, that it takes both papers to form the mortgage, and half of the mortgage is recorded, half left unrecorded. Another answer is that the deed on its face and viewed alone imports an absolute sale, and is not recordable, and is regarded as if not recorded, since its recordation is without effect. Being void, though recorded, it can not be held good as a recorded paper by the mere existence of the unrecorded agreement. If we view the paper in the light of a mortgage, there must be a delivery of possession or recordation. Jones, Chat. Mortg. § 322.

The reasons given above for holding the deed void as to creditors rests upon law, not on the theory or ground that the parties acted with set intent to defraud creditors.

Other questions may be said to arise as to the validity of the deed. Say that both papers, deed and agreement, were one. Would the fact that it provides for the continuance of possession of the chattels in Isaacsen avoid it as to creditors? In the Virginia and West Virginia cases—and they are numerous—bearing on deeds of trust leaving the grantor in possession of chattels, or giving him power of sale expressly or impliedly, or reserving rights to him, there is, if not conflict, confusion and complication; but, under their light, it is not difficult to decide a given case. See *Gardner* v. *Johnson,* 9 W. Va. 403; *Harden* v. *Wagner,* 22 W. Va. 356; *Klee* v. *Reitzenberger,* 23 W. Va. 749, and cases cited therein.

It is unnecessary to pass over the ground covered by the opinions in those cases simply for repetition. In this case, as the goods are not such as are consumable in their use or retention, and the retention of possession by Isaacsen did not imply a power of sale, and as, in fact, not only was no power of sale given him, but it was negatived in the requirement that he should deliver the lumber to the creditor upon his debt, and only on full payment of the debt from its proceeds could he get back any of the property, I hardly think, viewing it as a deed of trust, that it could be held void under the principles of the case referred to; but I do not intend to decide this. I think the deed void, viewed as an act of absolute sale, because of want of delivery of possession; and, viewed as a mortgage, it is void because there was neither delivery of possession nor effective recordation. Whether, if both papers had been recorded, the provision in the agreement as to retention of possession would avoid it, I do not say. I do not regard section 3, c. 74, Code, as bearing on the case. If it does, it is an additional reason for the invalidity of the appellant's claim.

For reasons above stated the decree as to Marshall Scott would be affirmed; but an additional reason to vindicate the decree as to him lies in the fact that his debt is purchase-money for timber bought of him by Isaacsen and sawed into lumber, and compensation for sawing, the lumber yet remaining on Scott's land in his possession and thus giving him a lien, even if the conveyance to Curtin & Co. were valid.

A seller of goods has a lien upon them for the price so long as they remain in his possession, as he is not required to part with them until he is paid for them, unless there is stipulation to the contrary. Where everything the seller has to do has been done, so that the title vests in the buyer, yet he can not take them out of the seller's possession until he pays for them. Part payment does not destroy his lien. The lumber was measured in order to ascertain the quantity to be paid for. Doubtless the title vested in Isaacsen; but there is a marked distinction between those acts which, between seller and buyer, go to make constructive delivery

and vest property in the buyer, and that actual, final delivery to the buyer, which puts an end to the seller's right to hold possession as security for the price.

Marking, measuring, weighing, and setting aside the goods serve only to identify and ascertain the quantity; for, if they are otherwise capable of being identified, title passes by the contract. Thus, if a whole quantity of lumber or iron in a pile be sold and pointed out to the purchaser, there is no need of further delivery to pass property; but so long as it remains upon the premises of the seller, as in this case, and thus in his possession, he may detain it until paid for it. 1 Jones, Liens, §§ 800, 807, 808.

AFFIRMED.