# CHARLESTON.

LUZADDER *et al.* v. HEATH *et al.*

Submitted October 31, 1916.    Decided November 14, 1916.

FRAUDULENT CONVEYANCES—*Transactions Invalid—Knowledge of Grantee.*

A conveyance of land, upon valuable consideration, will not be cancelled as fraudulent at the suit of creditors, where the proof fails to show, with reasonable certainty, knowledge by the grantee of the grantor's insolvency or of a fraudulent design on his part at the time of the transfer.

Appeal from Circuit Court, Preston County.

Bill in equity by George W. Luzadder and another against Lona L. Heath and another. From a decree for defendants, plaintiffs appeal.

*Affirmed.*

*Hogg & Hogg,* for apellants.

*A. G. Hughes* and *F. E. Parrack,* for appellees.

LYNCH, JUDGE:

Denied relief upon a bill charging fraud in the procurement of a deed made by John E. Heath to Lona L. Heath, wife of his brother J. D. Heath, plaintiffs bring the case here for review on appeal.

The grantor, an unmarried man, conducted a hotel in Grafton, his sister Alice M. Heath residing with him. The lot conveyed is located in Rowlesburg, and on it the grantee and her husband claim they have resided continuously since 1901, under a contract of purchase from the grantor at the price of $1000, of which $600 was paid by the transfer by them of a lot previously purchased from A. D. Bowman. Whether the contract of sale between John E. and Lona L. Heath was written or verbal until November 1, 1911, the testimony leaves somewhat uncertain. On that day, however, the agreement was reduced to writing and signed by the grantor, who two days later executed the deed assailed as fraudulent. The real purpose for obtaining the written evidence of the agree-

ment, as explained by witnesses, was that it might furnish the basis for credit to secure the loan already conditionally negotiated in an amount sufficient to pay the residue of the purchase money due on the original contract of sale. Out of the amount of that loan the grantee, on the date of the deed to her, paid John E. Heath the balance due on the price agreed to be paid for the grant of the Rowlesburg lot, after deducting a prior trust lien thereon given to secure Joseph A. Pugh in the payment of a $500 loan to John E. Heath, about one half of which he had theretofore paid. The remainder due on the contract and deed, after discharge of the Pugh trust, was paid to Alice M. Heath in the presence of the grantor and by his direction.

These facts the proof definitely shows. They are but slightly if at all controverted. Indeed, nothing having any direct tendency to cast doubt or suspicion upon their truthfulness is attempted to be proved, except in support of the allegations in the bill that Lona L. Heath had neither property nor credit sufficient to purchase the lot conveyed to her, or to secure the money paid therefor; that both the grantor and grantee then were insolvent; that she was then aware of his insolvency, and that the conveyance was made by him and accepted by her with intent to hinder, delay and defraud his creditors, and especially the plaintiffs, Luzadder and Ralphsnyder.

These charges she positively denies in her answer, and as a witness in her own behalf. The proof introduced to sustain the charges made is indirect, inconclusive and unsatisfactory, except as to the insolvency of the grantor. But no knowledge of that fact is traced to Mrs. Heath. She said she did not know the grantor was insolvent when the deed was made; and plaintiffs did not allege or offer any proof to show insolvency when the orignal contract of purchase was entered into and part performed by them in 1901, more than ten years prior to the date of the conveyance. This contract they feebly attempt to discredit. Ralphsnyder does repeat conversations which he says were had between him and Lona L. Heath, her husband and John E. Heath regarding the Rowlesburg lot. As to conversations had between him and John E. Heath,

if any, his testimony was of course incompetent, because as a creditor he was interested vitally in the result of the suit, John E, Heath then being dead; and Lona L. and J. D. Heath contradict him as to conversations with them. Besides, other proof corroborates them sufficiently to warrant the conclusion that such contract of sale was in fact entered into. One of the witnesses on whose testimony plaintiffs place much emphasis, and who manifests a disposition to serve them efficiently, said, perhaps inadvertently, though doubtless truthfully, that he carried to Lona L. or J. D. Heath a message from John E. Heath that they must pay him what they owed "or pay rent on the property", meaning of course the Rowlesburg lot occupied by them. And it was of the balance due him on the purchase of that lot no doubt that he said to other persons who testified for plaintiffs that J. D. Heath owed him. They did not specify any other indebtedness. Their statements were not explicit. They spoke merely of some claim or liability due him from his brother or sister-in-law, although the latter deny these witnesses talked with them as regards any liability due John E. Heath.

Again, plaintiffs charge and seek to show inability of Lona L. Heath to pay or secure the money with which to pay the balance due on the contract of purchase. An adequate answer to this contention is that she did secure the money and with it did pay that balance. Of that no doubt can exist. No attempt is made to deny it. She borrowed the $500, with part of which she paid the Pugh debt and secured a release of that lien. The remainder she paid to Alice M. Heath, as directed by her brother-in-law John. This fact Alice M. Heath does not pretend to deny. Nor did plaintiffs recall her as a witness to controvert or explain that transaction, although she volubly had theretofore endeavored to impute dishonesty and fraud to a brother with whom and under whose sheltering protection she had spent the greater part of her lifetime since the death of their mother.

Nothing adduced by plaintiffs is sufficient to warrant the conclusion that the transaction complained of is tainted with fraud. It is merely the consummation of a contract delayed in its execution. And, although §1, ch. 74, Code, declares void

every conveyance secured with the intent to hinder, delay and defraud creditors, yet therein it is provided: ''This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor''. There is no competent and persuasive evidence that the conveyance was intended as a voluntary gift or charge, or fraudulent transaction, or concealment, or that in it reposed any covin, collusion or deceit with intent to hinder or delay creditors. It is not subject to such animadversion. It was executed openly, in the presence or with the knowledge and acquiescence of Alice M. Heath, who received part of the purchase money as the custodian thereof for her brother, the grantor. She knew the deed was to be executed by her brother before he signed it. Bowman discussed it with her, and she did not then protest or object.

In view of these facts, it is not necessary to refer to the question of the competency of a great mass of the evidence introduced by plaintiffs, much of which manifestly is violative of the explicit language of §23, ch. 130, Code.

The decree will be affirmed.

*Affirmed.*