# CHARLESTON.

## MILLER v. CORRELL.

Submitted May 29, 1924.   Decided September 23, 1924.

1.  FRAUDULENT CONVEYANCES—*Conveyance on Valuable Consideration not set Aside in Absence of Showing Grantee's Knowledge of Fraudulent Design.*

    Where the evidence fails to show with reasonable certainty that the grantee in a deed had knowledge of a fraudulent design on the part of the grantor in selling the property, and it is proved that a valuable consideration passed to the grantor, the conveyance will not be set aside for alleged fraud at the suit of a creditor of such grantor.   (p. 217).

    (Fraudulent Conveyances, 27 C. J. § 175).

2.  SAME—*Conveyance of Land Between Near Relatives not Badge of Fraud, Though May Affect Degree of Proof.*

    A conveyance of land between near relatives is not a badge of fraud when such conveyance is attacked by creditors, though it may require less proof to show fraud than where such relationship does not exist.   (p. 219).

    (Fraudulent Conveyances, 27 C. J. § 152).

3.  SAME—*Retention of Possession of Real Estate by Grantor After Conveyance Only Prima Facie Evidence of Fraud.*

    The retention of the possession of real estate by the grantor after a conveyance thereof by deed is only prima facie evidence of fraud, which may be rebutted by proof.   (p. 220).

    (Fraudulent Conveyances, 27 C. J. § 294).

    NOTE:  Parenthetical references by Editors, C. J.—Cyc.   Not part of syllabi.

Appeal from Circuit Court, Monroe County.

Suit by R. C. Miller against H. F. Correll and another. From a decree for plaintiff, defendants appeal.

*Reversed, and bill dismissed.*

*Thomas N. Read,* for appellants.
*R. L. Clark,* for appellee.

MILLER, JUDGE:

The purpose of this suit was to have set aside a deed from

the defendant H. F. Correll to his sister the defendant Anne Correll, alleged to have been executed to hinder, delay and defraud the creditors of the said H. F. Correll, and especially the plaintiff.

Plaintiff alleges in his bill, that in the month of April 1920, he sold to defendant H. F. Correll a tract of 106 acres of land for $3,000.00, of which $400.00 was paid in cash, the balance represented by three notes executed by defendant H. F. Correll, due in one, two and three years; that when the first and second purchase money notes were not paid at maturity, he advised Correll that he would proceed to sell the land under his vendor's lien, and that owing to the general depreciation of farm land in that vicinity, it was probable that the land would not sell for enough to satisfy the three notes above mentioned, and that he would look to defendant for any loss occasioned by such depreciation. It is further alleged that at the time plaintiff so advised Correll of his intention to sell the 106 acres, defendant was the owner of another tract of 95 acres in the vicinity, and that within a few days after such notice H. F. Correll sold and conveyed to his sister Anne Correll this tract, for the purported consideration of $4,000.00, but that no consideration in fact passed from Anne Correll to her brother; and that the sole purpose of the transfer of the said land was to hinder, delay and defraud Correll's creditors, especially the plaintiff, of which fraudulent intent the defendant Anne Correll had notice before and at the time she purchased the land. Plaintiff alleges, that at the sale of the 106 acre tract, he purchased the same for $2,000.00, and thereby suffered a loss of $1,109.75, for which he recovered a decretal judgment in the decree confirming the sale of the land to him. It is also alleged that the defendant H. F. Correll is insolvent.

A certified copy of the deed from H. F. Correll to Anne Correll is filed as an exhibit to the bill, and prayed to be made a part thereof. Besides the 95 acres of land, the deed purports to convey "all the personal property belonging to the said parties of the first part," though no allegation in the bill mentions this fact. The bill also purports to exhibit the final decree in the vendor's lien suit, but we do not find it in the record here presented.

The circuit court found that the transfer of the 95 acres of land was fraudulent and decreed a sale of the same.

The main question presented here is whether the defendant Anne Correll can be charged with participating in the fraud, if any there was, in the transfer of the property to her by the deed of her brother. If the grantor was guilty of fraud, did she know of his fraudulent intent, or had she knowledge of such facts as to put her on inquiry to ascertain the purpose of the grantor in disposing of his property? By her answer and depositions, she denies any knowledge of fraudulent intent on the part of her brother. She says she bought the land only to secure her brother's indebtedness to her, and that H. F. Correll told her that plaintiff had agreed to take back the 106 acres in settlement of his claim and that the matter was settled. Plaintiff himself, in his deposition, says that in a conversation with Miss Correll, the last of April or the first of May, 1922, after the making of the deed to her on February 21st of that year, about three weeks after the institution of the vendor's lien suit, he told her "that rather than have any trouble that I would take the place back, and if he would deed it back that I wanted half of the wheat at first, but I had agreed to take half of the wheat if he would deed it back to me and give me a right of way to the road like I had it when I sold it to him and turn the place over to me, but he never did agree to give me the right of way positively, and he said he would come over and we would have the deed written by Mr. Sydenstricker, but he never did come and he had a deed made up at Greenville, and I heard that he didn't deed me the right of way, or half of the wheat, and so I just told her I wouldn't accept it, and then she said that if the wheat was all that was in the way that she would pay for the wheat herself, but she didn't know what he would do about the right of way to the road down that way, and that was all that was between us about me taking the place back." Miss Correll says she first learned that a satisfactory settlement had not been reached between her brother and the plaintiff about the last of April. She then went to plaintiff's home, where the conversation about which plaintiff testified took place. She says she not only offered to pay for the half of the wheat, as plaintiff says, but also offered to pay some back

taxes on the 106 acres, of which plaintiff was complaining. She says she went to plaintiff's home because she learned from her brother that plaintiff was threatening to institute some kind of suit against the Miller land. Plaintiff did not obtain a decree of sale in the vendor's lien suit until at the July term of court, and the final decree in the cause was rendered November 14, 1922. In the meantime he made no attempt to proceed, by attachment or otherwise, against the personal property conveyed by Correll to his sister by the deed of February 21st.

There is no attempt to show that Anne Correll knew of any controversy between her brother and plaintiff before she purchased the property in question. In his depositions plaintiff says that he guessed Miss Correll knew of her brother's indebtedness to him, but he could give no reason why she should have known even this fact, except that she ought to have known it. As soon as she learned that the vendor's lien suit was being brought, she went to plaintiff, on the occasion above mentioned, because, she says: "My brother was unable to go; his health was such that he was unable to make the journey, and he asked me to go to see Mr. Miller, and Mr. Miller had practically agreed to have the land returned to him, conveyed to him by deed." This was more than two months after the conveyance of the 95 acres. We do not think that the evidence shows any knowledge of fraud by the defendant Anne Correll.

It appears that a valuable consideration passed to H. L. Correll for the conveyance of the 95 acres to his sister. She proves that at the time her brother owed her $920.31, evidenced by notes executed by him, some of them dated in 1918 and 1920; that she paid her brother after the execution of the deed to her sums amounting to $288.21, and paid back taxes against the land, the sum of $67.03; that she assumed debts of her brother to another sister in the sum of $224.45; and that she executed to him her note for $2,500.00, to make up the balance of the purchase money. The consideration named in the deed was $4,000.00. Miss Correll, by her evidence accounts for exactly this amount.

While section 1 of chapter 74 of the Code declares to be void every conveyance made with intent to hinder, delay or

defraud creditors, it is therein provided that: "This section shall not affect the title of a purchaser for valuable consideration, unless it appears that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor." *Luzadder* v. *Heath,* 79 W. Va. 202; 6 Enc. Dig. Va. & W. Va. Rep. 561.

It is said that transactions between brother and sister should be more closely scrutinized than if such relationship did not exist, when there is fraud charged. This is true; but relationship is not a badge of fraud, though it may require less proof to show fraud where such relationship exists. *Bierne* v. *Ray,* 37 W. Va. 571; *Butler* v. *Thompson,* 45 W. Va. 660; *Colston* v. *Miller,* 55 W. Va. 490; Wait on Fraudulent Conveyances, (3rd ed.) sec. 242; Bump on Fraudulent Conveyances, (4th ed.) sec. 67. Here there is very little evidence to charge the grantee with knowledge of fraudulent intent. On the contrary, we think she has cleared herself of such charge.

Plaintiff contends that the retention of real property by the grantor becomes a badge of fraud, when the conveyance is attacked by creditors of the grantor, and casts upon his grantee the burden of showing that such retention by him is a holding for the grantee in good faith. It is true that such possession is prima facie evidence of fraud. *Bradley* v. *Martin,* 28 W. Va. 773; *Curlin* v. *Isaacsen,* 36 W. Va. 391; *Blackshire* v. *Pettit,* 35 W. Va. 547; *Klee* v. *Reitzenberger,* 23 W. Va. 749. Miss Correll's explanation of her brother's remaining on the land after his conveyance to her, is that he agreed to do so until a sale of the personal property could be made. Miss Correll lived in another county, where she was engaged in teaching school. She says her brother was to remain on the farm, manage it, and take care of the live stock until it could be disposed of advantageously, and that this was a part of the consideration that led her to purchase the farm and the other property. She says Correll had no interest in the land or stock whatever after the sale to her; that he was simply taking care of the farm and cattle; and that the cattle were sold as soon as they were in a condition for sale. Then the brother left the farm, removing to a western state, as he had for some time contemplated doing on

account of ill health. On account of Miss Correll's occupation and the fact that she did not live in the vicinity of her farm, it was necessary that she secure some one to manage the farm and take care of the cattle and other personal property. Why not the brother, as long as he remained in the state? He had been in charge of the property before the sale to his sister, and ought to be competent to look after her interests. In view of the other facts in evidence, and the absence of evidence of any actual fraud on the part of Anne Correll or knowledge of facts on her part to put her on inquiry, we think her explanation sufficient to overcome any badge of fraud raised by the fact that H. F. Correll remained on the farm until the personal property was disposed of.

The next point made by plaintiff is that an absolute sale of personal property, with possession continuing in the seller, is fraudulent *per se* as to creditors, without other evidence of fraud. Is this true? In *Poling* v. *Flanagan,* 41 W. Va. 191, 194, Judge BRANNON says: "The rule that the retention of possession of a chattel by the seller after absolute sale is *per se* fraud—that is, conclusive evidence of fraud—rendering the sale void as to subsequent purchasers and creditors of the seller, does not prevail here, but it is *prima facie* evidence of fraud, and will overthrow the sale as to purchasers and creditors unless circumstances of good faith are shown by the purchaser. I am relieved of any discussion of the subject by the elaborate discussions in *Davis* v. *Turner,* 4 Gratt. 422, and *Bindley* v. *Martin,* 28 W. Va. 773. In the former case the doctrine of fraud *per se,* or that such retention of possession is conclusive evidence of fraud, is repudiated, and the rule laid down that the 'retention of possession of personal property by the vendor after an absolute sale is *prima facie* fraudulent, but the presumption may be rebutted by proof'." See, also, *Curtin* v. *Isaacsen, supra.*

Here the personal property is not involved. No attempt was made to recover it and subject it to the defendant H. F. Correll's debts when it could have been reached. The personal property in question consisted largely of live stock, which had to be taken care of on a farm, and it is only reasonable that Miss Correll would leave it on the land she had pur

chased; and we do not think that the retention of possession by the vendor is any more evidence of fraud than the retention of the land, in this case. Both the real and personal property were conveyed by the same instrument; and both were left together, where they were at the time of the conveyance. When the personal property was later sold at public auction, Miss Correll says she turned over to her brother a part of the proceeds thereof, in cash and notes, to the amount of $1,500.00, and that he credited her with that amount on her $2,500.00 note given him as a part of the consideration for the property conveyed to her. This latter statement is corroborated by a letter written her by the cashier of the Alderson National Bank, of Alderson, W. Va., advising her that the bank held her note, endorsed by H. F. Correll, for $2,500.00, with a credit of $1,500.00, and further stating: "We discounted this note for H. F. Correll, and thought it probably a good idea to let you know that we owned it." It appears that a small part of the personal property sold at the public sale did belong to H. F. Correll. Whatever acts of possession H. F. Correll may have exercised over the property, real and personal, conveyed to his sister, it was all turned over to her, or the proceeds thereof credited to her, six months before the present suit was instituted.

It is alleged that H. F. Correll was insolvent at the time of the institution of this suit. This is denied in the answer of each of the defendants. Miss Correll testified that he was not insolvent; and there is no proof to the contrary.

In view of the facts and circumstances disclosed by the evidence, we are of opinion that the circuit court erred in holding that the conveyance of the property in question was fraudulent. The decree will, therefore, be reversed, and the bill dismissed.

*Reversed and bill dismissed.*