No. 55,666

CREDIT UNION OF AMERICA, *Appellant*, v. CECIL B. MYERS, KENNETH V. MYERS, LOBERTA R. MYERS, and DORIS GILBERT, *Appellees*.

(676 P.2d 99)

Opinion filed January 13, 1984.

*James T. Wiglesworth,* of Rainey & Wiglesworth, of Overland Park, argued the cause, and *Kenneth C. Slowinski,* of the same firm, was with him on the briefs for the appellant.

*J. Eugene Balloun,* of Balloun & Bodinson, Chartered, of Olathe, argued the cause, and *Ron Bodinson,* of the same firm, and *Charles W. Thompson,* of Kansas City, were on the brief for the appellees.

The opinion of the court was delivered by

LOCKETT, J.: The plaintiff, Credit Union of America (Credit Union), filed an action to set aside two conveyances of land it alleges were fraudulent. The conveyances involve two separate transactions. The trial court granted summary judgment against the plaintiff and it appeals. The named defendants in the action were Cecil Myers, Kenneth Myers, Loberta Myers and Doris Gilbert.

The first series of events began June 17, 1976, when Cecil Myers and his stepbrother, Kenneth Myers, formed a partnership. The partnership was formed to buy certain real property in Wyandotte County as an investment. The partnership agreement states:

"*Contribution of Partners:* The Partners contemplate personally borrowing Three Hundred Fifty Five Thousand and no /100ths Dollars ($355,000.00) to contribute to the Partnership for the purpose of developing a car dealership facility on the property described in Exhibit 'A' herein. Each Partner shall be liable for 50% of the loan, namely One Hundred Seventy Seven Thousand Five Hundred and no/100ths Dollars ($177,500.00). The loan shall be a mortgage on the Land described in Exhibit 'A' and Partner, Cecil Myers, shall further contribute the equity in said Real Estate at the time the mortgage loan is closed; said equity shall be valued at Seventy Four Thousand and no/100ths Dollars ($74,000.00). The Partners shall from time to time make additional contributions equal to their pro rata share, in accordance with their interest in the capital of the Partnership, of such capital as is necessary to hold and/or develop the Real Property in accordance with the purposes of the Partnership until the same is disposed of as agreed by the Partners."

Cecil Myers was apportioned a 58 percent share of the partnership, and Kenneth Myers held a 42 percent share.

Cecil Myers owned part of the real estate the partnership planned to purchase. He conveyed this property on September 16, 1976, to himself and Kenneth as joint tenants. The deed does

not mention the Myers' partnership. Cecil and Kenneth, as individuals, borrowed $350,000.00 from the Fidelity State Bank of Kansas City on September 23, 1976. The loan was secured by a mortgage on the land conveyed on September 16, 1976. The two men had formed an automobile dealership corporation, Myers Buick-Opel, Inc., in June, 1976, and a building was constructed on the property and leased to the corporation on January 3, 1978. The lease was entered into "by and between CECIL MYERS AND KENNETH W. MYERS, both single persons, Lessors, and Myers Buick-Opel, Inc., Lessee."

In 1977, criminal charges for commercial bribery were filed against Cecil Myers. Cecil was accused of having paid secret commissions or bribes to a loan officer employed by Credit Union in return for the loan officer's approval of loan applications of customers of Myers Buick-Opel, Inc. In 1978, Cecil was convicted of commercial bribery. Buick Motor Division terminated the dealership agreement it had with Myers Buick-Opel, Inc. on November 15, 1978, because of the conviction of Cecil. The termination was effective in 60 days.

July 10, 1978, Credit Union filed a civil action against Cecil Myers seeking actual and punitive damages. Credit Union alleged that by paying its loan officer secret commissions for approving loan applications of customers of Myers Buick-Opel, Inc., Cecil Myers had conspired to defraud Credit Union and had tortiously intermeddled with Credit Union's contract of employment with the loan officer.

In January, 1979, the property at 6336 State Avenue was leased to Chrysler Realty Corporation. The lease agreement did not expressly mention the Myers' partnership. The lease was for 15 years with total rent amounting to $1,562,580.00.

On May 1, 1979, Cecil and Kenneth Myers dissolved their partnership. The dissolution agreement provided:

"DISSOLUTION OF
CECIL MYERS AND KENNETH V. MYERS,
A PARTNERSHIP

"WHEREAS articles of copartnership were entered into on the 17th day of June, 1976 by and between CECIL MYERS and KENNETH V. MYERS, and

"WHEREAS, the said Cecil Myers and Kenneth V. Myers have mutually agreed to dissolve said copartnership by mutual consent: It is hereby stipulated and agreed that all the assets of any kind and nature, all outstanding accounts, office fixtures, and so forth, and the good will of said business shall be the property of said Kenneth V. Myers for his own use and behoof forever. The said

Kenneth V. Myers agrees to assume and to pay all liabilities of said copartnership and for and in consideration of all interest in said copartnership heretofore owned by the said Cecil Myers, the said Kenneth V. Myers hereby agrees to cancel a certain promissory note dated June 15, 1976, from Cecil Myers to Kenneth V. Myers in the amount of $150,000.00, a copy of which is attached hereto and made a part hereof.

"Witness our hands this 1st day of May, 1979.

s/ Cecil Myers
CECIL MYERS
s/ Kenneth V. Myers
KENNETH V. MYERS"

The $150,000.00 was a June 15, 1976, loan made from Kenneth to Cecil Myers when Kenneth paid in $300,000.00 to Myers Buick-Opel, Inc. as capital. The quitclaim deed transferring Cecil's realty to Kenneth was dated May 1, 1979, but was not recorded until June 5, 1980. This transfer is labeled by the plaintiff as a fraudulent conveyance.

Also on May 1, 1979, a partnership was formed between Loberta Myers, Kenneth's wife, and Doris Gilbert, Cecil Myers' ex-wife. On the same date the Myers-Gilbert partnership purchased from Kenneth Myers the property and automobile dealership facilities at 6336 State Avenue. The Myers-Gilbert partnership was to pay $50,000.00 to Kenneth Myers for the property and pay the balance of the loan from Fidelity State Bank, which equaled $338,128.58. The property had been appraised at a value of $670,000.00 on September 20, 1978.

Kenneth Myers assigned the lease with Chrysler Realty Corporation on the State Avenue property to the Myers-Gilbert partnership for $25,000.00 on May 1, 1979. As previously stated, the 15-year lease would provide $1,562,580.00 in rentals to the lessor. Rental payments by Chrysler Realty Corporation were made to Kenneth and Cecil Myers until August 25, 1980, when Kenneth Myers notified the lessee that future payments should be made to Loberta Myers and Doris Gilbert.

The second series of events Credit Union complains of occurred between Cecil Myers and Doris Gilbert. The two were married on January 27, 1978. The marriage was annulled on December 7, 1978. No division of property was ordered by the district court in its annulment decree, and no formal settlement agreement was executed by the parties. A quitclaim deed dated December 8, 1978, and recorded May 11, 1979, transferred a

parcel of realty from Cecil to Doris Gilbert. The property contained four rental units and had a market value of between $10,000.00 and $25,000.00, but was subject to a mortgage. Cecil Myers' grandmother continued to receive rents from the rental property after the conveyance. At the same time, Ms. Gilbert conveyed to Cecil Myers her share of the residence they had jointly purchased and had lived in during their marriage. Cecil Myers and Gilbert continued to live in the home until 1980. The trial court determined the property transfers were part of an annulment property division.

After the two transactions transferring real property were completed, Cecil Myers owned only his residence. The residence was exempt property not attachable by creditors.

On August 22, 1980, a jury awarded Credit Union $335,315.15 in damages against Cecil Myers in its suit against him for conspiracy to defraud and tortious interference with a contract. Credit Union filed an action on November 3, 1980, against Cecil Myers, Kenneth Myers, Loberta Myers and Doris Gilbert, seeking to set aside the two series of conveyances of land as fraudulent. The trial court granted a summary judgment motion against Credit Union on all counts.

The facts of this case have been fully developed by discovery. The trial judge reviewed the pleadings filed in the action, examined the documentary evidence, and read the depositions of the four defendants prior to granting the defendants' motion for summary judgment. There was no further evidence between the parties to present at the time of trial. Is Credit Union correct when it claims the trial judge improperly granted the defendants summary judgment?

First, summary judgment is proper only if the pleadings and depositions taken, viewed in the light most favorable to Credit Union, the party against whom the motion was directed, together with the benefit of all reasonable inferences and doubts, show there remains no genuine issue of material fact. When summary judgment is challenged on appeal, the appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. *Dugan v. First Nat'l Bank in Wichita*, 227 Kan. 201, Syl. ¶ 3, 606 P.2d 1009 (1980). Using this standard, was it proper for the court to grant summary judgment?

In Kansas every conveyance of land made with the intent to defraud creditors is deemed utterly void and of no effect. K.S.A. 33-102. Honesty and fair dealings are presumed, and one charging fraud must prove the same. Direct proof of fraud can seldom be obtained. Such evidence is not absolutely essential to establish the dishonest purpose of the parties to a pretended transfer of property. The fraudulent purpose may be shown by the conduct and appearance of the parties, the details of the transactions, and the surrounding circumstances. *Cox v. Cox,* 39 Kan. 121, 123, 17 Pac. 847 (1888).

In general, the elements which comprise a fraudulent conveyance are first, an intent on the part of the grantor to hinder, delay or defraud his creditors and second, the participation of the grantee in such fraudulent scheme or such knowledge on the latter's part of facts and circumstances as would import knowledge of the fraud to him. This court has recognized six badges or indicia of fraud. The badges or indicia of fraud are: (1) a relationship between the grantor and grantee; (2) the grantee's knowledge of litigation against the grantor; (3) insolvency of the grantor; (4) a belief on the grantee's part that the contract was the grantor's last asset subject to a Kansas execution; (5) inadequacy of consideration; and (6) consummation of the transaction contrary to normal business procedures. *Polk v. Polk,* 210 Kan. 107, 110, 499 P.2d 1142 (1972).

What was the relationship between the grantor and the grantees in the two transactions? In the first transaction, Cecil Myers is Kenneth Myers' stepbrother. In the second transaction, Cecil Myers was married to Doris Gilbert; the property was exchanged under an agreement entered into by them outside the court's decree annulling their marriage. We have a well-established rule of law that conveyances and transfers of property from one member of a family to another are subject to stricter scrutiny as to their bona fides than between strangers, where the rights of creditors are, or may be, thwarted thereby. *Hardcastle v. Hardcastle,* 131 Kan. 319, 291 Pac. 757 (1930). The fact that the parties to the transfers of properties are related by blood or marriage does not warrant a conclusion that the transactions were fraudulent as to creditors but it does subject the transfers to closer scrutiny by the finder of fact.

In *Stephenson v. Wilson,* 147 Kan. 261, 265-66, 76 P.2d 810 (1938), this court reviewed decisions from other jurisdictions:

"In *Hansen v. First Nat. Bank of Dunlap*, 197 Ia. 1101, 198 N.W. 505, the action was to quiet the title to certain real estate held by plaintiff by a deed from her husband on the same date on which an execution had been issued to subject the property to satisfy a judgment in favor of the defendant bank. Plaintiff prevailed in the court below, but the supreme court reversed the judgment, saying—

" 'Although the mere relationship between the parties to a contract does not *per se* constitute a badge of fraud, courts sense the obligation to scrutinize closely transactions between relatives when a creditor's interests are involved. Therefore, in dealing with this class of testimony, we necessarily, and perhaps unconsciously, give weight to it in the light of experience and are influenced by the accordance of the evidence offered with facts within the realm of human conduct and experience. The circumstances surrounding the impeached transaction are mute witnesses in the case, and usually are vitally forceful and probatively cogent. We think in terms of their probability, and in the last analysis, the weight to be given the evidence rests, as Greenleaf said, "upon our faith in human testimony, as sanctioned by experience." ' (p. 1103.)

"In a similar case, *Barks v. Kleyne*, 198 Ia. 793, 200 N.W. 439, the court said:

" 'Although blood relationship is not *per se* a badge of fraud, it strengthens the inferences that arise from circumstances; and whenever this confidential relation exists, the parties are held to a fuller and stricter proof of the consideration and the fairness of the transaction.' (p. 799.)

"In *Miller v. Correll*, 97 W. Va. 215, 124 S.E. 683, the rule is thus stated:

" 'A conveyance of land between near relatives is not a badge of fraud when such conveyance is attacked by creditors, though it may require less proof to show fraud than where such relationship does not exist.' (Syl. ¶ 2.)

"In *Williams v. Ellington*, 233 Ala. 638, 172 So. 903, the suit was a creditor's bill which attacked as fraudulent and void a conveyance of real estate from a husband to his wife and children. In reversing the judgment of the trial court the supreme court said:

" 'As to the deed, it is to be observed that at the time of its execution the grantor was largely indebted to the bank, and the conveyance is to the wife, son, and daughter. The burden of proof was then shifted to defendants to establish by strong and convincing evidence that an adequate and valuable consideration was paid for the conveyance. (Citations.)

" 'True, the relationship is not within itself a badge of fraud, but under all the authorities, supported by reason and common sense, transactions between such relatives are to be jealously watched, and must be subjected to closer scrutiny than would be required of a stranger. (Citations.)' (p. 640.)"

Transfer of property by a debtor in anticipation of a suit against the debtor, or while a suit is pending against him is commonly recognized as an indication of fraud. This is especially so where the transfer renders the debtor insolvent or greatly reduces his assets. Here Credit Union filed its civil action against Cecil Myers July 10, 1978. Cecil Myers transferred two pieces of real property after Credit Union commenced its action: (1) Cecil

quitclaimed by deed the house containing the four apartments to Doris Gilbert (his ex-wife) December 8, 1978; (2) Cecil quitclaimed by deed to Kenneth the building and land where the automobile dealership was located May 1, 1979. Cecil Myers' remaining property was a homestead exempt from attachment by creditors. Both grantees, Doris Gilbert and Kenneth Myers, were aware of litigation pending against Cecil.

Secret, hurried or transactions not in the usual course of business are examples of possible fraudulent intention. Cecil's quitclaim deed to Doris shows December 8, 1978, as the date executed, but the quitclaim deed was not recorded until May 11, 1979. Cecil's quitclaim deed to Kenneth indicates May 1, 1979, as the date executed, but that quitclaim deed was not recorded until June 5, 1980.

Our decisions have recognized that whether a conveyance is or is not fraudulent as to creditors is largely a question of fact. *Houska v. Lake,* 148 Kan. 229, 80 P.2d 1102 (1938); *Bank of Inman v. Graves,* 148 Kan. 468, 83 P.2d 666 (1938). A court should be cautious in granting a motion for summary judgment when the resolution of the dispositive issue necessitates a determination of the state of mind of one or more of the parties. *Hustead v. Bendix Corp.,* 233 Kan. 870, Syl. ¶ 2, 666 P.2d 1175 (1983). The trial court erred in granting summary judgment in this case since questions of fact remain to be determined.

The trial court stated in its memorandum opinion the following:

"A conveyance made for fair consideration cannot be set aside as a 'fraudulent conveyance' because by definition such a conveyance is without fair consideration. In addition, a conveyance can only be set aside by clear and convincing evidence of fraud."

Credit Union argues that the trial court erred in stating that clear and convincing evidence is required to defeat a motion for summary judgment in a fraudulent conveyance case. We agree.

The general rule is that fraud is never presumed and must be proven by clear and convincing evidence. *Nordstrom v. Miller,* 227 Kan. 59, 65, 605 P.2d 545 (1980). The trial court incorrectly applied the trial evidentiary standard to the motion for summary judgment. There are no special tests for a court to apply when a motion for summary judgment is considered. A party resisting a motion for summary judgment in an action based on fraud need

not present "clear and convincing" evidence of fraud in opposing the motion. The usual rules governing the ruling upon motions for summary judgment apply to actions based on fraud. *Dugan v. First Nat'l Bank in Wichita,* 227 Kan. 201, Syl. ¶ 4.

Whether Credit Union can set aside Cecil Myers' conveyances to Doris Gilbert and Kenneth Myers as fraudulent conveyances is a question of fact. The trial court, when considering defendants' motion for summary judgment, could not determine the credibility of witnesses or the weight to be given their testimony. The trier of fact has the responsibility of determining what testimony should be believed and what weight should be given the testimony. Here the court, when granting the Myers' motion for summary judgment, determined the state of mind of the defendants, and found from the facts that the conveyances between the defendants were not fraudulent. In effect, in a motion for summary judgment, the trial court tried the issues, weighed the facts, determined the credibility of the witnesses and granted judgment for the defendants. By such action the trial court erred.

Other issues presented by Credit Union in its appeal deal with the introduction of evidence or the law to be applied at the trial. Those issues are for the trial judge to rule upon and determine at the time of trial.

The district court's granting of summary judgment is reversed and the case remanded for trial on the issues.