(845 P.2d 79)

No. 67,777

Turon State Bank, *Appellant,* v. The Estate of Walter G. Frampton, Deceased, and Donna R. Downs, *Appellees.*

Opinion filed January 15, 1993.

*Dell Marie Shanahan Swearer,* of Branine, Chalfant and Hill, of Hutchinson, for appellant.

*Tom R. Smith,* of Smith & Miles, Chartered, of Liberal, for appellees.

Before Elliott, P.J., Davis, J., and C. Fred Lorentz, District Judge, assigned.

Lorentz, J.: This is a fraudulent conveyance action wherein Turon State Bank (Turon) appeals from the trial court's entry of a partial directed verdict in favor of the Estate of Walter G. Frampton, deceased, and Donna R. Downs; the jury verdict in defendants' favor; and the trial court's denial of Turon's motion for new trial.

Walter and Pauline Frampton, husband and wife, were joint tenants living on 183 acres of farmland in Reno County, Kansas. Pauline had inherited some of the land from her family and had purchased the remainder from other heirs. Walter had farmed the land since 1953, taking out loans from Turon which he had paid off in full by 1982 before he retired from farming in 1983. During the later years while Walter was farming, he and his son, Ronald, each farmed their own land but together they formed the Flying F Ranch partnership for the purposes of cutting wheat

and irrigation. In September of 1985, the partnership owed Turon about $75,000.

By July of 1985, Walter (age 69) and Pauline (age 71) had developed serious health problems. On July 8, 1985, Walter and Pauline deeded the farmland into the Walter G. and Pauline Frampton Revocable Trust naming their daughter, Donna Downs, as trustee. The deed was filed with the register of deeds on the same date. The purpose of the trust was to care for Walter and Pauline as long as they lived, then pass the land to Donna and Ronald without the necessity of a will.

In September of 1985, Turon's loan officer, Arden Vernon, discussed with Ronald and the Framptons the restructuring of Ronald's $200,000 to $250,000 personal debt to enable Turon to obtain a Farmer's Home Administrator's (FHA) guarantee on it. As part of the deal, Arden asked the Framptons to give Turon a mortgage on the farmstead. The Framptons declined to sign a mortgage; Pauline told Arden they had put the land in a trust and no longer owned it. Arden did not ask for a financial statement from Walter or check on the status of the farmland deed at the courthouse before presenting the $75,000 note to Walter. As part of the restructuring, Walter was required to transfer $50,000 to $60,000 of partnership equipment that he owned to Ronald while taking on the $75,000 partnership debt. Even though Arden knew Walter was 69 years old, had emphysema, was taking care of a bedfast wife, and was no longer farming, he presented Walter with the $75,000 note, making Walter responsible for the partnership debt and a security agreement giving Turon an interest in Walter's remaining farm equipment. The parties understood that Ronald would be the person paying off the note; however, Arden did not have Ronald cosign the promissory note, security agreement, or a financial statement. Arden admitted that he was aware the restructuring of the note would transfer partnership equipment into Ronald's name, thus transferring $60,000 to $80,000 of equipment away from Walter, who would now be responsible for the note. Arden was not concerned about having a financial statement from Walter at the time because the restructuring would, and did, result in FHA guaranteeing Ronald's debt up to 80 percent.

Donna had been providing care and support for her parents as early as 1984 and in November 1985, Walter and Pauline made an oral agreement with Donna to deed the farmstead to her in return for her taking care of them. Thereafter, Donna gave 30 days' move-out notice to the tenants of a $400 per month rental she owned, refurbished it, and moved her parents into this small three-bedroom house two blocks from her home in Liberal. From then on, through her mother's death in May of 1986 to her father's death in May of 1991, Donna cared for her parents, paid their gas, heating, and electricity bills; paid the taxes on the house; provided them with approximately $250 per month in groceries; gave them $100 to $200 spending money every so often; hired a woman to come in and help take care of Pauline; and paid her mother's mortuary and funeral expenses.

In return for the care and support Donna had already given them after the oral contract, the Framptons ended the trust by having Donna as trustee deed the property back to them and, at the same time, deeding it from them to her individually. The transfer of deeds was made and recorded in May of 1986. At the time the deed to Donna was made, Walter did not know Ronald was going to default on the $75,000 note as Ronald was still farming and no suit was pending against him. By the time of her father's death, Donna had spent well over $60,000 in supporting her parents, besides the personal care and attention she gave them.

Ronald declared bankruptcy in early 1988. A month or two later, in April 1988, Turon filed suit against Walter to recover the $75,000. Having obtained a money judgment against Walter in that suit, Turon went after the farmstead only to find it was deeded to Donna. Turon admits in its brief that the farmstead is worth only $46,000 to $47,000. Thereafter, Turon filed this suit against Walter and Donna, alleging a fraudulent conveyance. After Walter died in May of 1991, the administrator of his estate was substituted in his place. A jury trial was held on November 18 and 19, 1991. The trial court granted defendants' motion for directed verdict as to 50 acres of farmland which contained the farmhouse and was separated from the rest of the acreage by a county road, but held that as to the remaining land, the jury would need to decide. The jury found in favor of Donna and the

Estate of Walter Frampton. Turon's motion for new trial was denied, and this appeal followed.

Turon first contends the trial court erred by failing to give its requested instruction on the badges or indicia of fraud.

The standard of review regarding the failure of a trial court to give a requested jury instruction is set out by case law as follows:

"It is the duty of the trial court to properly instruct the jury upon the theory of the case. Errors regarding jury instructions will not demand reversal unless they result in prejudice to the appealing party. Instructions in any particular action are to be considered together and read as a whole, and where they fairly instruct the jury on the law governing the case, error in an isolated instruction may be disregarded as harmless. If the instructions are substantially correct, and the jury could not reasonably be misled by them, the instructions will be approved on appeal. [Citation omitted.]" *Guillan v. Watts,* 249 Kan. 606, 617, 822 P.2d 582 (1991).

Turon argues the trial court erred in not giving its requested instruction because the limited statutory language instruction failed to adequately instruct the jury on the issue of fraudulent conveyance. Turon further argues that the badges or indicia of fraud are established law and it is reversible error not to give an instruction incorporating them.

Defendants counter by contending there has never been a badges or indicia of fraud instruction and to give one would only place undue emphasis on certain items of evidence. They contend the instruction given by the trial court adequately instructed the jury on the theory of the case and the law, and that the badges of fraud are only indicia of fraud that the court may use on review to examine whether there was sufficient evidence to uphold a verdict of fraud and that they are not to be used and emphasized in a specific instruction.

The essential elements of K.S.A. 33-102 pertaining to this case are: (1) There was a transfer of land (2) "made or obtained with intent to hinder, delay or defraud creditors . . . ." The trial court's instruction number 8 charged the jury that

"[i]n order to establish a fraudulent conveyance in this case two conditions must be met:

"1. The Turon State Bank must prove by clear and convincing evidence that the grantor, Walter Frampton, had an intent to hinder, delay, or defraud his creditor, the Turon State Bank; and

"2. The Turon State Bank must prove by clear and convincing evidence that the grantee, Donna Downs, participated in the fraudulent scheme, or that she had such knowledge of Walter Frampton's facts and circumstances as would impart knowledge of the fraud to Donna Downs."

In addition, the trial court gave an instruction on fraud by silence, which is the same as PIK Civ. 2d 14.42 (1992 Supp.), and charged the jury that it was to determine the weight and credibility of the witnesses and use its common knowledge and experience with regard to the matter testified to.

The badges or indicia of fraud have long been recognized in Kansas. See *Koch Engineering Co. v. Faulconer*, 239 Kan. 101, 105, 716 P.2d 180 (1986); *Credit Union of Amer. v. Myers*, 234 Kan. 773, 778, 676 P.2d 99 (1984); *Polk v. Polk*, 210 Kan. 107, 110, 499 P.2d 1142 (1972). These badges have been used by the trial courts and the appellate courts in Kansas to review whether there was sufficient evidence to support a finding of fraud. See *City of Arkansas City v. Anderson*, 243 Kan. 627, 631, 634, 762 P.2d 183 (1988), *cert. denied* 490 U.S. 1098 (1989); *Koch*, 239 Kan. at 106, 109; *Myers*, 234 Kan. at 778; *Polk*, 210 Kan. at 110-12. However, no case exists in Kansas recognizing them as necessary in a jury instruction or discussing the giving or failure to give them as part of the instruction to the jury.

Kansas courts have long held:

" 'Badges of fraud' is defined as meaning those signs or indicia from which its existence may be inferred as a matter of law . . . . While these badges might give rise to an inference of fraud, *this inference would be subject to explanation and contradiction by other circumstances and by oral testimony. A badge of fraud is but little more than a suspicious circumstance.*" (Emphasis added.) *Schreiber Milling Co. v. Nutrena Mills, Inc.*, 149 Kan. 276, 282, 87 P.2d 577 (1939).

See *Mohr v. State Bank of Stanley*, 244 Kan. 555, 569, 770 P.2d 466 (1989); *Koch*, 239 Kan. at 106, 107; *Polk*, 210 Kan. at 111-12.

The badges of fraud have been used as evidence to be weighed by the trier of fact, either the trial court or the jury. *Mohr*, 244 Kan. at 569. One of the badges or indicia of fraud set out by Turon in its requested instruction is the relationship between defendants Walter Frampton and Donna Downs. Kansas courts have recognized that the mere fact the grantor and grantee are

related, standing alone, would not support a finding of fraud. *Koch,* 239 Kan. at 107; *Myers,* 234 Kan. at 778. This may be based on the recognition that the badges or indicia of fraud are *evidence* to be considered by the trier of fact and not an element to be charged in a jury instruction.

Few authorities could be found regarding the giving of a jury instruction containing the badges or indicia of fraud. 37 C.J.S., Fraud § 132, implies that it may be error to give a jury instruction which "assumes the existence of a fact which is for the jury to decide . . . or is adequately covered by the instructions given." "A charge defining fraudulent conveyances in the language of the statute is sufficient." 37 C.J.S., Fraudulent Conveyances § 437.

A recent law journal article discussing jury instructions in fraud cases states:

"In drafting non-pattern instructions, the most common mistake is failing to properly treat the distinction between factual issues and the elements of the cause of action. Lawyers are easily misled because in the paradigm pattern instructions 'negligence' is a mixed question of fact and law. But that is not to say that a factual 'issues' instruction is the solution. Instead, to avoid instructions flawed by repetition (or worse, inconsistency), *we recommend that fraud instructions not attempt to separately itemize the factual issues. The facts should be woven into the explanation of the legal elements.*" (Emphasis added.) Kehoe and Hindman, *Jury Instructions for Fraud Cases,* 80 Ill. B.J. 20, 21 (1992).

Our research uncovered only two cases regarding the giving of the badges or indicia of fraud as a jury instruction. The more recent case (*Ratchford v. Manchester Life & Cas. Management,* 679 F.2d 741 [8th Cir. 1982]), supports the position taken by Kehoe and Hindman that the badges not be given as a jury instruction. In *Ratchford,* the plaintiff appealed, raising the issue that the district court erred by not giving his proffered instruction containing the badges of fraud. 679 F.2d at 745. The court on appeal held that the proffered instruction was properly rejected, finding that plaintiff's counsel was "free to utilize whatever badges of fraud had been adduced by the proof in attempting to persuade the jury as to the defendants' fraudulent intent." 679 F.2d at 745-46.

The older case, *Dinkins v. Robbins et al.,* 200 S.C. 475, 493, 21 S.E.2d 10 (1942), held it was error for the trial court to refuse to give an instruction on the badges of fraud: "In an issue which

depends upon indirect and circumstantial evidence, the jury is entitled to the aid of the Court's instruction in evaluating such circumstances which the Courts have held to be evidence or badges of fraud."

The cases from other jurisdictions which plaintiff relies on in its brief are distinguishable. First, *Texas Sand Company v. Shield*, 381 S.W.2d 48 (Tex. 1964), is distinguishable because, although it involved a jury trial, it did not involve a question of giving an instruction on the badges of fraud. Rather, the appellate court considered the badges of fraud when reviewing defendants' claim that there was insufficient evidence to support the jury's finding of fraud. 381 S.W.2d at 52-3.

Next, in *Citizens State Bank of Hayfield v. Leth*, 450 N.W.2d 923, 927 (Minn. App. 1990), the case was not tried to a jury, so no jury instruction was given, and the appellate court only used the badges of fraud to review the lower court's decision. Even if a jury instruction had been given, the badges of fraud in that case are set out in a Minnesota statute. 450 N.W.2d at 927.

Lastly, *Hulsether v. Sanders*, 54 S.D. 412, 415, 223 N.W.2d 335 (1929), is also distinguishable as not being a jury case. The appellate court, without mentioning the badges of fraud, merely reviewed the lower court's decision in light of the Uniform Fraudulent Conveyance Act. 54 S.D. at 415. It should be pointed out here that Kansas has not adopted the Uniform Fraudulent Conveyance Act nor the Uniform Fraudulent Transfer Act.

Considering the discussion herein, it appears the *Ratchford* case is the case most consistent with the law in Kansas and should be followed. Here, Turon had ample opportunity to argue evidence reflecting the badges of fraud in closing argument had it chosen to do so.

We therefore hold that in Kansas, the badges or indicia of fraud should not be given as jury instructions, and the trial court did not err in refusing to do so.

Turon next argues the trial court erred by failing to give an instruction regarding the adequacy of consideration.

In its proposed jury instruction, Turon requested the trial court to instruct the jury that

"[o]ne of the indications of fraud is inadequacy of consideration. In determining whether the alleged agreement between Walter Frampton and Donna Downs had value, you may use the following definition:
"'Value is given for a transfer if, in exchange for the transfer, property of reasonably equivalent value is transferred. Value *does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business* to furnish support to the debtor or another person.'" (Emphasis added.)

The trial court refused to use Turon's proposed jury instruction because Kansas has not adopted the Uniform Fraudulent Transfer Act, which was the basis for the instruction, and because the case of *National Bank v. Croco,* 46 Kan. 629, 26 Pac. 942 (1891), upon which Turon relied, was so old.

Turon argues the trial court erred in refusing to give its requested instruction because both the Uniform Fraudulent Transfer Act and Kansas case law recognize that such consideration, *i.e.,* the promise to care for and support her parents, is inadequate for a transfer of land, especially where the grantor already has existing debt.

As previously stated, neither the Uniform Fraudulent Conveyance Act, promulgated in 1918, nor the Uniform Fraudulent Transfer Act, promulgated in 1984, has been adopted in Kansas. This may very well be a result of Kansas taking a different approach to oral contracts for land wherein one party promises to support and care for another in return for the land.

Defendants argue the trial court properly refused to give the instruction because it emphasized only one aspect of the case. They also contend Turon was not prejudiced as Donna gave more than enough consideration for the land. Turon relies upon *National Bank,* which is distinguishable. In *National Bank,* the Kansas Supreme Court upheld the transfer of property to the wife, but found the transfer to the *nonfamily* member, the attorney, invalid. In exchange for the transfer the attorney was to provide future legal services for the grantor, his wife, his father, his mother, and the administrator of his deceased brother's estate. 46 Kan. at 631, 632, 634. The transfer was made to the attorney while the grantor was insolvent. This created a new debt for future services for not only the grantor but also debts of third parties to the attorney. In essence, the grantor tried to pay for

the other person's debts with existing property that should have been devoted to current creditors.

The holding in *National Bank* regarding the nonfamily transfer is distinguishable from Kansas case law regarding transfers made between family members based on an oral agreement for future care and support. Early on, Kansas recognized:

"Where one has rendered personal services to another under an oral agreement for compensation by the devise of real estate, the contract may be enforced irrespective of the question of possession, where the services are of such a character that their money value can not be satisfactorily estimated. This accords perfectly with the principle that the statute of frauds is not enforced against one who in reliance upon an oral contract has so far acted upon it that he can not be adequately compensated in damages." *Schoonover v. Schoonover*, 86 Kan. 487, 489, 121 Pac. 485 (1912) (oral contract with father to take care of him for life in exchange for his property).

Regarding an oral contract for the sale of land, the Kansas Supreme Court recently stated:

"[O]ral contracts for the sale of land can be enforced for equitable reasons . . . .

"Partial performance of an oral contract for the sale of real estate has generally been accepted as the kind of a compelling equitable consideration justifying the removal of the contract from the operation of the Statute of Frauds. [Citations omitted.] The true basis for the application of the doctrine of partial performance is that it is grossly unjust and inequitable for one party of the oral contract to rely on the contract and partially perform his obligations thereunder while the other takes advantage of the partial performance and repudiates the contract by invoking the Statute of Frauds. [Citation omitted.]

"Certain conditions, however, must be met before partial performance will take an oral contract for the sale of real estate out of the Statute of Frauds. The contract must be fully made and completed in every respect, except for the writing, and the parol agreement must be certain, clear, unambiguous, and unequivocal. The oral contract must be fair, reasonable, and just. [Citation omitted.] In addition, partial performance of the oral contract will not take it out of the Statute of Frauds where the performing party can be compensated in money. [Citation omitted.] Finally, the asserted partial performance must have been performed with the knowledge, consent, or acquiescence of the party to be charged. [Citation omitted.]" *Bank of Alton v. Tanaka*, 247 Kan. 443, 452-53, 799 P.2d 1029 (1990).

Once there is partial performance on the part of the grantee, the contract has been held enforceable. See *Lyons v. Lyons*, 114 Kan. 514, 517-18, 220 Pac. 294 (1923) (once the agreement was

made and there was performance by the son, "the matter of the execution of the deed was of little consequence as the father, even if he intended to do so, had no right or power to convey away the land which by the performance of the agreement had become the property of the plaintiff").

Evidence at trial showed the property to be in trust before the promissory note was ever signed. Arden had been informed that the land no longer belonged to the Framptons and that he could not rely on it because it was in trust. Donna had been caring for her parents before the oral agreement was ever made. The oral agreement was made in the fall of 1985 whereupon Donna immediately increased her performance and continued to so perform until both parents died. In May of 1986, due to all Donna had done to that point, and in consideration of what she would continue doing, her parents deeded the property to her.

Substantial uncontroverted evidence was introduced at trial to establish that Donna, in fact, provided care for her parents in an amount in excess of what the value of the property actually was and did so in pursuance of the oral contract she had entered into with her parents. We therefore hold the trial court did not err in finding that, based on evidence of consideration in the nature of substantial actual performance of the promise for future care, adequacy of consideration was no longer an issue upon which the jury needed to be instructed.

Turon's final contention is that the trial court erred in granting a partial directed verdict in favor of the defendants as to the 50 acres separated by a county road when the homestead had been abandoned at the time of the filing of the deed.

Defendants point out the oral agreement was made in the fall of 1985 while the farm was still the Frampton's homestead, not in May of 1986 when the deed was transferred. They argue the agreement was consummated by giving of consideration in the fall of 1985 and, because the transfer occurred before the homestead was abandoned, directed verdict should have been entered for them on the entire 160 acres. Finally, defendants also argue this issue is moot because of the jury's verdict and because the jury was never informed of the trial court's partial directed verdict.

We agree this issue is moot in light of the jury's verdict finding no fraudulent conveyance and so hold.

Affirmed.